# BANKS *v.* STATE
[No. 53, October Term, 1953.]

*Decided January 8, 1954.*

The cause was argued before SOBELOFF, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

Submitted by *Harrison Banks,* in proper person.

*H. Clifton Owens, Assistant Attorney General,* with whom were *Edward D. E. Rollins, Attorney General,* and *Hamilton P. Fox, Jr., State's Attorney for Wicomico County,* on the brief, for the appellee.

DELAPLAINE, J., delivered the opinion of the Court.

Harrison Banks, a resident of Salisbury, but now confined in the Maryland House of Correction, has appealed here from his convictions by the Circuit Court for Wicomico County on two criminal informations charging larceny. Code 1951, art. 27, sec. 406, amended by Laws 1952, ch. 18.

On January 7, 1953, when defendant appeared in the People's Court for Wicomico County, he waived a preliminary hearing and was held for the action of the grand jury. On February 16, he filed with the Clerk of the Circuit Court a petition and suggestion,

in accordance with Code 1951, art. 27, sec. 679, as to each of the criminal charges pending against him, setting forth that he wished to waive his right to an indictment by the grand jury, and that he sought an immediate trial, without regard to terms of Court, upon a criminal information filed by the State's Attorney. Each of the informations contained three counts.

The first information charged: (1) that on December 22, 1952, defendant broke into the storehouse of Williamson & Son Company with the intent to steal certain property under the value of $100; (2) that he broke therein and stole one suede jacket of the value of $10, and one electric clock of the value of $15; (3) that he stole one suede jacket of the value of $10, and one electric clock of the value of $15.

The second information charged (1) that on December 20, 1952, defendant broke into the storehouse of Esso Standard Oil Company with the intent to steal certain property under the value of $100; (2) that he broke therein and stole one Royal typewriter of the value of $50; (3) that he stole one Royal typewriter of the value of $50.

The cases came on for trial before Judge Adkins on February 25. Defendant pleaded not guilty to both informations, and elected to be tried by the Court without a jury. At the conclusion of the first case, the Court found him not guilty on the first two counts, and guilty on the third count.

When the second case was called, the State's Attorney agreed that he would not offer any testimony as to the first two counts if defendant would change his plea to the third count from not guilty to guilty. Accordingly the docket entries show that he pleaded not guilty as to the first and second counts, but guilty as to the third count, and that the State declined to offer testimony as to the first and second counts.

As in the first case, the Court found defendant not guilty on the first and second counts, and guilty on the third count. In each case the Court sentenced him to

the House of Correction for a term of 18 months, the sentences to run consecutively.

Defendant now contends that certain personal property seized in his home unlawfully was improperly admitted in evidence, and that the verdicts were contrary to the evidence. It is impossible to consider these contentions because there is no evidence in the record.

Before the first case was called, defendant was informed that no stenographer was available in court to take the testimony. Thereupon his attorney stated that they were willing to proceed without a stenographer.

There is no provision in the Federal Constitution or the Constitution of Maryland requiring that testimony in criminal trials shall be recorded stenographically or by mechanical means. Accordingly criminal trials have frequently been held in this State and in other jurisdictions without the taking of testimony by a stenographer.

One such trial was that held in the District Court for the Southern District of Florida in *Richard v. United States,* 5 Cir., 148 F. 2d 895. In that case there was no request for a stenographic report of the trial. The bill of exceptions was made from memory, as such bills had traditionally been made. It was certified by the judge to be true and to contain all the material evidence in narrative form. The defendant complained on appeal that the judge erred in failing to provide a court reporter as required by Act of Congress requiring that one or more reporters shall attend at each session of the court and record either by shorthand or mechanical means all proceedings in criminal cases had in open court. At the time of the trial the qualifications and salary scale for the reporters had been fixed by the Judicial Conference as required by the Act, but the Congress had not made any appropriation for their payment, and there was no official reporter in the Southern District of Florida.

Judge Sibley, speaking for the Fifth Circuit Court of Appeals, in upholding the conviction, commented

as follows: "Notwithstanding the mandatory language of the Act above quoted, it is plain that no one will accept appointment and do the work of court reporter if there is no provision to pay him, and that the court cannot require the verbatim record of proceedings in criminal cases if there is no reporter whose duty it is to make it. It was not the intention or the effect of the Act to suspend the power of the district courts to try criminal cases till reporters could be secured. If there had been an official reporter in office, and his presence was insisted on, it may be that the court would have been bound to secure his presence. That question can wait till it arises. Here there was no official reporter. No request was made for a substitute, or any other action by the court. It was not error to proceed with the trial."

The same situation appeared in the District Court for the Western District of Arkansas in *Vickers v. United States*, 8 Cir., 157 F. 2d 285. There also the defendant appealed on the ground that the District Court did not have a verbatim record of the proceedings made either by shorthand or mechanical means, as prescribed by Congress in the Act of 1944.

Judge Sanborn, speaking for the Eight Circuit Court of Appeals, observed that Congress had authorized the appointment of reporters for the District Courts and directed that one of the reporters should record all proceedings in criminal cases had in open court; but at the time the case was tried no reporter had been appointed by the District Court, as Congress had neglected to provide the means for paying the salaries of court reporters. "Hence," he said, "there was no reporter 'so appointed' and the court was unable to furnish one. * * * Obviously the Act had nothing to do with the jurisdiction of the district courts or the requirements of due process."

Of course, the right of an accused to have the testimony at his trial reported stenographically may depend upon the language of a statute providing for

a stenographer at criminal trials. For example, the Legislature of Oklahoma enacted a statute providing that the county stenographer shall take down in shorthand all testimony and proceedings during the trial in all civil and criminal cases. In *Wiswell v. State,* 14 Okl. Cr. 517, 173 P. 662, the Criminal Court of Appeals of Oklahoma held that, since the law was mandatory, any person charged with violating a penal statute is entitled to have the testimony in a trial before a court of record taken in shorthand by a court reporter, and upon proper demand is entitled to have the transcript of the proceedings for the purpose of taking an appeal, and that if this right is denied and a conviction results, a new trial will be awarded on appeal.

On the other hand, where there is no statutory provision giving an accused person the right to demand that the testimony at his trial shall be taken down by the court stenographer and transcribed for use in subsequent proceedings, the services of such a stenographer at his trial are within the discretion of the court, although the accused may be entitled to use the services of a private stenographer at the trial.

In 1908 the Legislature enacted a statute authorizing the Judges of the First Judicial Circuit of Maryland to employ a stenographer to serve in the respective Courts of that Circuit. The only statutory command to the stenographer is that he "shall perform such duties as may be imposed upon him by the judges of said court or either of them, and shall be required to furnish typewritten or printed copies to the attorneys of the court as the court may prescribe and direct." Laws 1908, ch. 437, Code P. L. L. 1930, art. 23, sec. 21.

In the case at bar defendant waived any right to have the testimony in the trial taken by a stenographer. It is an unquestionable rule that where there is no constitutional or statutory mandate and no public policy prohibiting, an accused may waive any privilege he has the right to enjoy. *Schick v. United States,* 195 U. S. 65, 24 S. Ct. 826, 828, 49 L. Ed. 99. Indeed,

while it has been held in several States that the defendant in a capital case cannot waive a constitutional right, the trend of the modern decisions has been to sustain the doctrine that any defendant in a criminal case may waive rights, whether constitutional or statutory, very much the same as in a civil case.

There can be no doubt that the accused in a criminal prosecution may waive the right to have the testimony at his trial taken by a stenographer. In this case defendant's attorney, Vaughn E. Richardson, presented an affidavit that before the trial he was informed that no stenographer was available to take testimony; that, with defendant's consent, he informed the Court that they would waive the taking of testimony by a stenographer; and that defendant was present in Court at the time of this waiver and it was done with his full knowledge and consent. In view of this affidavit, we must conclude that defendant waived the right to have a stenographic report of the trial.

It is immaterial that defendant, by waiving the right to have the testimony taken down by a stenographer, lost his right to obtain a review of the evidence. Prior to 1872 no appeals were allowed in any criminal prosecutions in Maryland except in some comparatively unimportant cases. *Mitchell v. State,* 82 Md. 527, 34 A. 246.

In 1872 the Maryland Legislature made it permissible for either the State or the accused in a criminal case to except to any ruling of the court and to tender a bill of exceptions as in civil cases. Laws 1872, ch. 316. Under that statute the only questions that could be considered on appeal were those presented by bills of exceptions.

In 1892 the Legislature amended the law by providing that appeals from judgments in criminal cases could be taken in the same manner as in civil cases. Laws 1892, ch. 506, Code 1951, art. 5, sec. 86. Accordingly, since 1892 all appeals in criminal cases have been taken from the judgments, and the records on appeal have included rulings on demurrers as well as exceptions to the evidence. *Kaefer v. State,* 143 Md. 151, 160, 122

A. 30; *Davis v. State,* 189 Md. 269, 272, 55 A. 2d 702.

In 1945 the Court of Appeals adopted the rule that formal exceptions to rulings or orders of the court are unnecessary; but for all purposes for which an exception has heretofore been necessary it is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take or his objection to the action of the court and his grounds therefor. Rules of the Court of Appeals, rule 17.

Although formal exceptions are no longer necessary, it is still necessary for the purpose of appeal that some objection be made and that the court rule on the question. In the absence of such a ruling, there is nothing for the Court of Appeals to review. *Courtney v. State,* 187 Md. 1, 48 A. 2d 430; *O'Donnell v. State,* 188 Md. 693, 53 A. 2d 688; *Davis v. State,* 189 Md. 269, 55 A. 2d 702; *Asner v. State,* 193 Md. 68, 65 A. 2d 881.

There is also the rule that the Court of Appeals should in no case decide any point or question which does not plainly appear by the record to have been tried and decided by the court below. Rules of the Court of Appeals, rule 9. This rule, adopted to ensure fairness for all parties in a case and to promote the orderly administration of the law, applies to both civil and criminal cases. So, when a party has the option either to object or not to object, as he sees fit, his failure to exercise the option while it is still within the power of the trial court to correct the error, constitutes a waiver of the error estopping him from bringing it to the attention of the Court of Appeals.

Defendant also claims that in the second case his plea to the third count was changed from not guilty to guilty without his consent, and thus he was compelled to be a witness against himself in violation of the Fourteenth Amendment of the Constitution of the United States.

Under the early practice of the common law, when the accused in a criminal prosecution was arraigned,

he was brought before the bench to plead in person, and his attorney could not enter a plea of guilty for him. In a number of recent decisions, it has been held that a plea of guilty may be entered by the attorney for the accused where the defendant is present, understands what is being done, and acquiesces in the plea. One of these decisions is *United States v. Denniston,* 2 Cir., 89 F. 2d 696, 110 A. L. R. 1296, 1299, where Judge Chase said:

> "While it is true that in ancient times when the rights of an accused were comparatively few much stress was laid upon the formality of arraignment and plea, especially in felony cases, and plenty of authority may be found to the effect that a plea of guilty at common law had to be made by the accused himself after he had been adequately identified, we are not disposed to subscribe to such rigidity of procedure. The reason for it has disappeared with the acceptance and use of modern methods which preserve the substance of all the rights of an accused person without so much sacrifice of the rights of the public before the altar of mere form. If an indicted person is actually present in open court with his attorney who is competent to represent him and does so under circumstances which fairly show that the attorney speaks for his client who understands what is being done and its import and who acquiesces when the attorney enters a plea of guilty for him, nothing but a slavish adherence to archaism could underlie a holding that the plea was void."

In the Court below the defense counsel entered a plea of guilty for his client to the third count of the second information. Defendant was charged in this count with violating Chapter 18 of the Laws of 1952, amending Code 1951, art. 27, sec. 406. This statute provides that if any person shall steal, take or carry away per-

sonal goods of another under the value of $100, and is convicted thereof, he shall be deemed guilty of a misdemeanor, and shall restore the goods and chattels so taken, or pay the full value thereof to the owner, and be fined not more than $50 or imprisoned for not more than 18 months in the House of Correction or Jail, or both fined and imprisoned.

The defendant in a criminal case cannot object to the fact that his own attorney pleaded guilty for him where the defendant acquiesced in open court in such plea. In *Rose v. State,* 177 Md. 577, 581, 10 A. 2d 617, this Court held that a person accused of murder may, either personally or by attorney, elect to have his trial before the court without a jury.

Of course, an attorney should not enter a plea of guilty for his client against his wishes. But in this case defendant failed to substantiate his charge that his attorney changed his plea from not guilty to guilty without his knowledge and consent. On the contrary, his attorney presented a statement under affidavit that, since the Court found defendant guilty on the third count in the first case, and since the testimony offered in that case was similar to the testimony to be offered in the second case, he considered that his client would in all probability be found guilty on the third count, and therefore he advised his client to change his plea from not guilty to guilty; and that this change of plea was made in open court with the defendant's consent and in his presence. In addition, Judge Adkins, who presided in both cases, made a statement under affidavit corroborating the attorney. In view of these definite statements under affidavit, we must reject defendant's claim that in the second case the Court deprived him of the protection guaranteed by the Fourteenth Amendment of the Federal Constitution.

As we have found no reversible error in the proceedings in these cases, we must affirm both convictions.

*Judgments affirmed, with costs.*