BASOFF *v.* STATE

[No. 77, October Term, 1955.]

*Decided January 12, 1956*

The cause was argued before BRUNE, C. J., and DELA-PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Charles J. Stinchcomb*, with whom were *Fred Oken* and *Joseph Rosenthal* on the brief, for appellant.

*James H. Norris, Jr.*, Assistant Attorney General, with whom were *C. Ferdinand Sybert*, Attorney General, *Anselm Sodaro*, State's Attorney of Baltimore City, and *John C. Weiss*, Assistant State's Attorney, on the brief, for appellee.

DELAPLAINE, J., delivered the opinion of the Court.

This appeal was brought here by Barnett Basoff, a resident of Atlantic City, New Jersey, from his conviction by the Criminal Court of Baltimore on an indictment charging that in October, 1954, he unlawfully used means for the purpose of causing an abortion upon a woman named Margaret Ann Thomas. Code 1951, art. 27, sec. 3.

At the time of the trial in February, 1955, Mrs. Thomas, a waitress, 24 years old, had been separated from her husband, Clinton E. Thomas, for nearly a year and a half. She lived with her sister and her sister's husband in an apartment at 827 North Eutaw Street. She testified that she had never met appellant until October 25, 1954. On that day Daniel Nathanson, proprietor of a grocery store at 260 West Biddle Street, gave her a telephone message "to meet Rob" on the corner of Eutaw Street and Madison Avenue at 3:30 p. m. She testified that appellant arrived there in a two-tone blue station wagon and asked if she was Margaret. She answered "Yes," and he told her to get into the car. He drove her a short distance on Madison Avenue, parked the car, and brought out a doctor's bag. He then took her to a room on the second floor of an apartment house at 801 North Eutaw Street. There he took some surgical instruments out of the bag and sterilized them. After asking her how far the pregnancy was advanced, he told her to lie upon the couch. He then inserted an instrument

and told her that he had to strike her womb. When she began to bleed, he inserted a catheter. She paid him $100 for that visit, and he agreed to see her again on the following day.

Mrs. Thomas further testified that on October 26 she received a message from Nathanson to meet appellant that evening at 6:30. She again met him at the corner of Eutaw Street and Madison Avenue, and he drove her in the station wagon to the De Luxe Cabins on the Washington Boulevard about two miles beyond the city line, arriving there at about 7 o'clock. She then testified as follows:

"We went in the cabin. The same thing happened as did the first time. * * * While he sterilized his instruments, I got on the bed. * * * That is when he asked me if I passed anything. I said 'No.' He said he had to turn my womb again. He inserted instruments. Then he said he would have to put another catheter in. He pressed on my stomach. I don't know what, but anyway I passed something. He told me it was all over then. He inserted another catheter to drain the blood, he said. He told me if I got to bleeding too bad, to take the catheter out. Then he gave me some kind of pills in case I started having pains."

On October 27 Mrs. Thomas, suffering with severe pains, entered the Maryland General Hospital, where she was treated for septic incomplete abortion. She was discharged on November 1, but was a patient there again from December 14 to 16.

On November 1 Policewoman Ethel Diven, assigned to the Pine Street Police Station, began an investigation of the case. She called to see Mrs. Thomas, but was unable to talk with her, as she had been out of the hospital only a few hours and was sick in bed. The policewoman made her next visit to Mrs. Thomas' apartment on November 9. Mrs. Thomas then made a statement and turned over to her a bottle of sulfa drugs which

appellant had given her. The policewoman testified that Mrs. Thomas gave her a description of the man who had committed the abortion. On November 18 the policewoman showed Mrs. Thomas the photographs of twelve men, and she identified appellant in one of the photographs.

Officer Robert O'Keefe, of the Atlantic City Police Department, testified that he received a request from the Baltimore City Police Department to investigate Robert Basoff, also known as Barnett Basoff, at the Majestic Hotel. Officer O'Keefe received a description of appellant and later a photograph of him. He testified that appellant was not known at the Majestic Hotel, but he found that Barnett Basoff and Mrs. Rae Basoff were operating the Rainbow Guest House at 151 St. Charles Place. Officer O'Keefe kept this house under surveillance from November 9 to 20. On November 20 he observed a blue station wagon parked in front of the house. The station wagon, a 1953 Chrysler, was registered in the name of Mrs. Rae Basoff. On December 13 the officer arrested appellant on a warrant charging him with abortion. Appellant was tried by the Criminal Court, sitting without a jury, and was found guilty and sentenced to be imprisoned in the Maryland Penitentiary for the term of five years and to pay a fine of $1,000.

I.

Appellant's first contention was that the trial judge erred in admitting the testimony of Mrs. Thomas and Daniel Nathanson as to telephone messages which Nathanson received for Mrs. Thomas at the grocery store. Nathanson testified that appellant visited his store on two occasions, first on or about October 22, and then about a week or ten days later. On the first visit appellant was seeking Mrs. Thomas' address and telephone number. Nathanson told him that she received her telephone calls in the phone booth in the grocery store. He also testified that appellant gave him his telephone number in Atlantic City.

The ground of appellant's objection was that the telephone messages which Nathanson received for Mrs. Thomas were from a person whose voice was not identified. It is a general rule of evidence that in order to render testimony of a telephone conversation admissible, some preliminary testimony, either direct or circumstantial, must be presented to establish the identity of the other person to the conversation. Of course, where the identity or the authority of a person with whom a witness conversed on the telephone is not in dispute, the testimony as to the telephone conversation may be admissible without the person's identification. *Baum v. State,* 163 Md. 153, 161 A. 244; *Colie v. State,* 193 Md. 608, 69 A. 2d 497; *White v. State,* 204 Md. 442, 104 A. 2d 810.

The essential issue in this case was not whether the telephone messages were true, or what the caller's name was, but merely whether the messages were received. The telephone calls were a link in the chain of facts tending to show that appellant was the man who performed the operation. Appellant came into the store before the telephone calls were received and asked Nathanson how Margaret could be called. He was informed that she received her calls at the telephone booth in the store. He was known to the prosecutrix as Bob. Appellant met Margaret where the caller said Rob would meet her. After the phone calls were received, appellant came into the store and said that he was Rob, and inquired for Margaret and left his Atlantic City telephone number. We agree that it was permissible to infer that appellant or someone on his behalf made the calls, and that they connected him with the crime alleged. The telephone messages corroborated other facts tending to show the identity of the accused. 6 *Wigmore on Evidence,* 3d Ed., sec. 1766. See *Miller v. Leib,* 109 Md. 414, 72 A. 466; *Commonwealth v. Aronson,* 330 Mass. 453, 115 N. E. 2d 362; *Kansas City Star Pub. Co. v. Standard Warehouse Co.,* 123 Mo. App. 13, 99 S. W. 765.

## II.

Appellant contended that it was error to permit Policewoman Diven to testify that Mrs. Thomas had identified him as the man who committed the abortion. He contended that the statements were hearsay, and that, as they were allegedly made on November 9 and November 18, several weeks after the criminal offense, they were not a part of the *res gestae.*

Appellant made no objection at the trial of the case to the policewoman's testimony as to Mrs. Thomas' statements. Therefore, we cannot consider the objection here. One of our rules respecting appeals provides: "In no case shall the Court of Appeals decide any point or question which does not plainly appear by the record to have been tried and decided by the Court below." Rules of the Court of Appeals, rule 9.

This rule applies to both civil and criminal cases. When a party has the option either to object or not to object, his failure to exercise the option while it is still within the power of the trial court to correct the error is regarded as a waiver of it estopping him from obtaining a review of the point or question on appeal. The Court of Appeals adopted the rule to ensure fairness for all parties to cases and to promote the orderly administration of the law. *Courtney v. State,* 187 Md. 1, 48 A. 2d 430; *Davis v. State,* 189 Md. 269, 55 A. 2d 702; *Banks v. State,* 203 Md. 488, 495, 102 A. 2d 267.

Appellant objected at the trial to the testimony of Policewoman Diven that she showed Mrs. Thomas the photographs of twelve men and she recognized one of them as that of the man who had produced the abortion. In some States it is held that the testimony of a police officer in a criminal case that the prosecuting witness recognized a photograph as that of the accused is inadmissible as hearsay evidence. *State v. Houghton,* 43 Or. 125, 71 P. 982. But we accept the rule that where it appears that the prosecuting witness had identified the accused prior to the trial under circumstances precluding suspicion of unfairness or unreliability, the prior

identification is admissible in evidence. We think it is evident that an identification of an accused made by a witness for the first time in the courtroom may often be of little testimonial force, as the witness may have had opportunities to see the accused and to have heard him referred to by a certain name; whereas a prior identification, considered in connection with the circumstances surrounding its making, serves to aid the court in determining the trustworthiness of the identification made in the courtroom. *State v. Frost,* 105 Conn. 326, 135 A. 446; *Revill v. State,* 210 Ga. 139, 78 S. E. 2d 12; *People v. Branch,* 127 Cal. App. 2d 438, 274 P. 2d 31.

In this case there was no suspicion of unfairness or unreliability, and there was no objection when the policewoman testified that Mrs. Thomas identified appellant at the preliminary hearing at the Northwestern Police Station. We, therefore, find that there was no prejudicial error in the admission of the policewoman's testimony that Mrs. Thomas recognized one of the photographs as that of appellant.

### III.

Appellant next contended that it was improper to introduce in evidence a piece of paper upon which Mrs. Thomas had written his name and address on the evening of October 26. Mrs. Thomas testified that while appellant was talking with the owner of the De Luxe Cabins, she copied his name and address from a post card in the station wagon, because he had invited her to look him up if she should ever come to Atlantic City. Her testimony was admitted without objection.

When the State offered the piece of paper in evidence, the defense objected on the ground that Mrs. Thomas first testified that she wrote the name and address after she came out of the cabin, but later testified that she wrote it before she went in. Appellant urged that this inconsistency was so glaring that it destroyed the foundation for introduction of the paper. We cannot accept that contention. As Mrs. Thomas testified positively that she wrote appellant's name and address on the paper,

and as there was no objection to the admission of that testimony, there was no prejudicial error in introducing the paper itself. The use of a paper or other memorandum as an aid to recollection has been recognized since an early stage in the history of trials. 3 *Wigmore* on *Evidence,* 3d Ed., sec. 735.

### IV.

Appellant contended that Officer O'Keefe should not have been permitted to testify about his investigation of appellant culminating in his arrest in Atlantic City. Appellant contended that the policeman's testimony was irrelevant in view of the fact that he made no effort to arrest him until December 13; and that the testimony was prejudicial because it might have given the impression that he had been hiding for about a month and hence it reflected upon his character.

The basic issue in this case is whether it was appellant who committed the abortion. After Mrs. Thomas and Nathanson testified that appellant lived in Atlantic City and that he drove a blue station wagon, the policeman's testimony that he located appellant in Atlantic City and found that a blue station wagon was registered in the name of his wife was relevant to the issue of identification.

### V.

Appellant further contended that the judge erred when he did not allow Mrs. Thomas to disclose who had caused her pregnancy. It was stated that at the preliminary hearing at the Northwestern Police Station she had declined to name the man who had caused her pregnancy, and it was urged that such testimony would be germane because it would reflect upon her credibility.

We have here, however, no criminal charge against Mrs. Thomas. She admitted that when she became pregnant she had been separated from her husband for about six months. But it is obvious that admission of testimony as to the identity of the man or men with whom she had sexual intercourse would have raised a collateral

issue and diverted the attention of the Court from the real issue in the case. *Meno v. State,* 117 Md. 435, 439, 83 A. 759. We, therefore, find no error in this ruling.

## VI.

Appellant finally contended that the State's evidence was not legally sufficient to sustain his conviction. Under the criminal rules, which were adopted by the Court of Appeals on December 6, 1949, and became effective on January 1, 1950, where a criminal case has been tried by the court sitting without a jury, the Court of Appeals may review upon both the law and the evidence to determine whether in law the evidence is sufficient to sustain the conviction, but the verdict of the trial court shall not be set aside on the evidence, unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. General Rules of Practice and Procedure, part 4, subd. 1, rule 7(c).

We emphasize that it is not the function of the Court of Appeals to determine whether or not the appellant in a criminal case was guilty beyond a reasonable doubt. The function of this Court is merely to decide whether there was evidence, or proper inference from the evidence, upon which the trial court could find the defendant guilty. If the record shows such evidence or proper inference, the Court of Appeals cannot find that the decision of the trial court is clearly erroneous. *Estep v. State,* 199 Md. 308, 86 A. 2d 470; *Stokes v. State,* 202 Md. 166, 95 A. 2d 871; *Willis v. State,* 205 Md. 118, 127, 106 A. 2d 85; *Floyd v. State,* 205 Md. 573, 582, 109 A. 2d 729.

In Maryland it is an established rule that a person accused of crime may not be convicted on the uncorroborated testimony of an accomplice. *Meyerson v. State,* 181 Md. 105, 112, 28 A. 2d 833; *Swann v. State,* 192 Md. 9, 63 A. 2d 324; *Watson v. State,* Md., 117 A. 2d 549, 552. But it is also held in this State that a pregnant woman upon whom an abortion is produced is not an accomplice of the person who administers the substance or performs the operation to produce the abortion, al-

though the criminal act is done with her consent and even upon her solicitation. In Maryland, a woman upon whom an abortion has been performed is regarded by the law as a victim of the crime, rather than as a participant in it. Therefore, her testimony does not require corroboration where it establishes satisfactory proof of the guilt of the accused. *Meno v. State,* 117 Md. 435, 438, 83 A. 759.

While it may seem illogical to hold that a pregnant woman who solicits the commission of an abortion and willingly submits to its commission upon her own person is not an accomplice in the commission of the crime, yet many courts in the United States have adopted this rule, asserting that public policy demands its application and that its exception from the general rule is justified by the wisdom of experience. *Dunn v. People,* 29 N. Y. 523, 86 Am. Dec. 319, 323; *People v. Vedder,* 98 N. Y. 630; *State v. Hyer,* 39 N. J. L. 598, 601; *State v. Smith,* 99 Iowa 26, 68 N. W. 428; *Watson v. State,* 9 Tex. App. 237; *State v. Pearce,* 56 Minn. 226, 57 N. W. 652; *State v. Tennyson,* 212 Minn. 158, 2 N. W. 2d 833, 139 A. L. R. 987; *United States v. Holte,* 236 U. S. 140, 35 S. Ct. 271, 59 L. Ed. 504.

Appellant placed reliance on the fact that Mrs. Thomas testified at one point that she made a notation of his name and address before she went into the cabin, but at another point that she made the notation after she came out. He also stressed the fact that she testified at one point that he used a catheter twice, but at another point that he used a catheter only once. He argued that these inconsistencies were so glaring that she was unworthy of belief.

We find no merit in this contention. The maxim *"Falsus in uno falsus in omnibus"* can be applied only where a witness has knowingly and wilfully given false testimony on a point material to the issue. Mrs. Thomas testified that she made the notation of appellant's name and address in the station wagon on the evening of October 26. Whether she wrote it before she entered the cabin

or after she came out is not of paramount importance. Likewise, whether appellant used one catheter or two was not a question which had to be established beyond equivocation, since it was undisputed that an abortion was produced.

Appellant insisted, however, that as a result of an injury which he sustained in Baltimore on October 22, he was confined to his bed in Atlantic City on October 25 and 26, the days on which the criminal acts were alleged to have been committed. He urged that his testimony, corroborated by his wife, an elevator operator, a laborer, and a neighbor, was more convincing than the testimony of Mrs. Thomas and her witnesses, and hence the trial judge should have accepted his alibi as true.

It is entirely true, of course, that an alibi of an accused, if thoroughly established, precludes the possibility of guilt. But, as we pointed out in *Floyd v. State*, 205 Md. 573, 581, 109 A. 2d 729, all the evidence in a criminal case is to be considered together, and the jury, or the trial judge sitting without a jury, does not weigh merely the evidence relating to the alibi and determine from that alone whether there is a reasonable doubt of guilt.

In the present case the trial judge was called upon to decide whether to believe Mrs. Thomas or the alibi. He had the opportunity to see the witnesses and to observe their demeanor on the stand. Mrs. Thomas swore positively that she met appellant on the afternoon of October 25, 1954, when he took her to a room in an apartment house on North Eutaw Street, where he inserted a surgical instrument in her womb for the purpose of producing an abortion; and that he met her again on the evening of October 26, when he took her to a cabin and again inserted a surgical instrument for the same purpose. She definitely identified appellant and her identification was corroborated by Nathanson. Moreover, the judge, in announcing his verdict, asserted that Mrs. Thomas testified "in a very straightforward manner," and that Nathanson was "one of the most straightforward witnesses" he had ever seen. The judge stated

that he believed appellant was in Baltimore on October 25 and 26. He did not believe the alibi.

For the reasons we have stated we cannot say that the verdict of the Criminal Court was clearly erroneous. The judgment of conviction must therefore be affirmed.

*Judgment affirmed, with costs.*