MOXLEY *v.* STATE

[No. 90, October Term, 1956.]

*Decided  February  13,  1957.*

The cause was argued before BRUNE, C. J., and COLLINS, HENDERSON, HAMMOND and PRESCOTT, JJ.

*Jerome A. Loughran* and *L. Wethered Barroll,* with whom were *Barroll & Wethered* on the brief, for appellant.

*James H. Norris, Jr., Special Assistant Attorney General,* with whom were *C. Ferdinand Sybert, Attorney General, C. Orman Manahan, State's Attorney for Howard County,* and *Charles E. Hogg, Special Assistant State's Attorney,* on the brief, for appellee.

HAMMOND, J., delivered the opinion of the Court.

E. Russell Moxley, Chief of Police of Howard County, appeals from the judgment and sentence (the minimum fine of $50.00) that followed conviction by the court without a jury of electioneering within one hundred feet of the polls, contrary to Code, 1951, Art. 33, Sec. 202. The complaining witness, Reid, testified that as he was about to enter the polling place in Ellicott City to vote in the primary election of May 7, 1956, Moxley, whom he did not know and who was not in uniform, approached him from the curb and when about five or six feet from the door of the polling place, handed him what he assumed to be a sample ballot, described by him as a piece of paper about four by six inches, folded, with the picture on the outside of a candidate to be voted on—the candidate of the Moxley faction of the party. Reid adds that there was no conversation at that time, that he took the paper, went in and voted, came back out and, seeing Moxley still there, walked up to him and told him that the signs said that he was not supposed to be electioneering closer than one hundred feet from the polling place. He says that Moxley replied: " 'I don't pay any attention to those signs' ", and when told that he ought to, answered: " 'We used to, but since we got the machines why we don't pay any attention to those signs anymore.' " Reid

decided to take action. He stopped at a store while driving home, called the Waterloo Barracks of the State Police and made a complaint of electioneering at the polls. He was told to call Major Weber at the Pikesville headquarters. Major Weber advised him to take the matter up with the State's Attorney or the County Commissioners. He came back to Ellicott City and talked to some one in the Commissioners' office and then went to the Supervisors of Election office, where he talked to a Mr. Wehland, one of the supervisors. Accompanied by Wehland, he went to the polling place and filed a complaint in the presence of a polling judge. He then returned home. Several days later, the Supervisors took the matter up with their counsel, who, after consultation with the Attorney General, advised them to tell Reid that if he wished to press the matter, he should swear out a warrant against Moxley. Reid says that the only person he knew in Ellicott City was a Mr. Miller from whom he had bought an automobile, and that he met the magistrate by pre-arrangement at Miller's place of business and there swore out the warrant. Reid's testimony as to the calls to the State Police was corroborated, as were his accounts of what he did and what happened after he received their advice.

A motion for a directed verdict was refused at the conclusion of the State's case. The testimony of the defense consisted of a denial by Moxley of Reid's charge and the recital of his version of the occurrence. He says that he was standing across the street and that Reid came out of the door of the polling place and handed him a ballot (Reid had been tried the week before on the charge of electioneering, pressed by Moxley, and had been acquitted). Moxley said at no time did he give Reid a ballot or a paper of any kind and that the only conversation between them was when he told Reid he didn't want the ballot Reid offered him. He had never seen a sample ballot with the picture on it Reid says was on the paper given him. Moxley's version of what occurred was corroborated by a worker for the Moxley faction of the party, who was across the street when Reid entered the polls. When the court asked this witness whether he had seen literature with the picture on it of the candidate Reid said he saw on the paper handed him,

his answer was "I'm not certain whether I did or not." The court asked another defense witness, who had worked in the local headquarters of the Moxley faction, whether she had seen literature with the picture of the candidate favored by that faction and her reply was: "I don't remember seeing anything with a picture on it."

Appellant made the effort, both on cross-examination of the State's witnesses and by testimony on his behalf, to show that Wehland, the member of the Board of Supervisors of Elections, and Miller, in whose office the warrant was sworn out, had pushed and, indeed, been responsible for, the prosecution by Reid because they hoped to "get" Moxley. It was shown that these two men had been sued by Moxley for libel, that the suit was pending, and that they belonged to one political party and Moxley to the other. The effort, of course, was to discredit the bona fides of Reid's prosecution and the truthfulness of his testimony. The evidence was, however, that Reid and Moxley were members of the same political party although they had favored different candidates in the primary.

Appellant's hopes for reversal are grounded on three claims of error below. First, he says that the court lost "jurisdiction" and, therefore, the trial was "a nullity" because of the following sequence of events: On May 22nd the court ordered that the State's Attorney for Howard County be disqualified from acting in the case because of "a personal and friendly relationship" between him and the accused, and that Charles E. Hogg of the Howard County Bar "* * * be, and he is hereby, appointed special State's Attorney for the purpose of performing all the duties of said office in connection with the prosecution of the said E. Russell Moxley". Several days later, the State's Attorney filed a petition, setting forth "That the aforesaid order of May 22nd, 1956 is illegal and void, and without authority or sanction at law" and that the recitals in the court's order of May 22nd had been widely circulated in the County and had given rise to the wrong inference, namely, that the State's Attorney was unwilling to prosecute. He suggested to the court that it would be in the public interest that assistant counsel be now appointed to aid in the trial of the case for the State and prayed that the order of May 22nd be

rescinded, that the recitals of the said order be expunged from the public records, and that an order be passed appointing an assistant counsel, as provided by Code, 1951, Art. 26, Sec. 7. On the morning of the trial, the State's Attorney in open court formally advised the trial judge that he had filed the petition asking rescission of the order of May 22nd, and then said: "It is my understanding that the Court has acceded to that requested petition, and has vacated the order of May 22nd, and expunged from the record the preamble to the order, and, at the same time, appointed an Assistant State's Attorney to aid the State in prosecuting this case. If that be the case, and if Mr. Hogg has been appointed, I would like him to handle the prosecution of this case. I will not prosecute." He was told that the order had been signed and Mr. Hogg appointed. Immediately thereafter, appellant elected to be tried by the court without a jury. No motion was made for continuance or change of venue.

Appellant argues that the order of May 22nd was without warrant in the constitution or statutes of the State and so beyond the power of the court to pass and, indeed, this is not disputed. The further claim is that the rescission of the order of May 22nd and the passage of the subsequent order appointing Mr. Hogg as Assistant State's Attorney for the purpose of aiding in the prosecution of the case did not cure the original error. It is said that the "net effect of the Court's action" was to eliminate the State's Attorney from the case and to permit it to be tried solely by the Special Assistant "who by law could only *assist* in the prosecution." The record (as we note without approving appellant's premises) does not support the claim. It is clear that once the court had stricken from the records the recitals as to the relationship of the accused and the State's Attorney, the prosecutor was not only content, but anxious, to remove himself from the case, and to have it tried by the Special Assistant. There is no substance to the contention that a regular Assistant State's Attorney, or a special assistant appointed by the court under the statute, may not prosecute a case alone if the State's Attorney so desires. Prosecutions by Assistant State's Attorneys, unaided by the State's Attorney,

take place throughout Maryland day in and day out, and have since the memory of man runneth not.

The appellant next contends that the evidence was insufficient to support the conviction. It is not claimed that the giving of a picture of a candidate, within the forbidden distance, to one about to vote, would not be electioneering within the proscription of Code, 1951, Art. 33, Sec. 202, and, indeed, we think such a claim could not be successfully maintained. The argument is that every necessary element of the crime charged was not sufficiently proven because there was no showing, other than Reid's testimony, that there ever existed campaign literature bearing the picture Reid says he was given, and that appellant's testimony proved there was none. The question resolved itself into an issue of fact. If Reid's testimony be accepted as true—and this was for the court to decide —there was such a pamphlet. The appellant had the difficult task of attempting to prove a negative and, in the attempt, all he could do was to say that he had seen no such literature and knew of none, and to offer testimony of two witnesses, who said only that they didn't remember whether or not there was any. Clearly the court could determine, if he believed Reid, that there was.

The final contention of appellant is that the trial court could not have found beyond a reasonable doubt, or to a moral certainty, that the appellant was guilty because, after reviewing the evidence and referring to the "* * * two utterly diverse versions of what happened", he said that he could "* * * never be sure of what the facts are" and that "I have to act on probabilities." We have no doubt that the trial court would not have found a verdict of guilty if he had not been convinced beyond a reasonable doubt of the guilt of appellant so, if the evidence on which he acted was sufficient to warrant his conclusion, the matter is at an end. As was said in *Edwards v. State*, 198 Md. 132, 157, 158: "In any case, civil or criminal, to meet the test of legal sufficiency, evidence (if believed) must either show directly, or support a rational inference of, the fact to be proved. * * * In a criminal case the fact must be shown, or the inference supported, beyond a reasonable doubt or to a moral certainty, or a reasonable doubt of an op-

posite fact must be created. The difference in degree of proof is ordinarily for the triers of facts." Here, if the trial court believed the testimony for the State, as evidently he did, the evidence was entirely adequate to sustain the verdict. Reid not only related actions by Moxley that offended the statute, but repeated statements he says Moxley made to him that, if made, were admissions of guilt. We think it clear from the record that the trial court, in speaking of doubts and probabilities, was referring to his mental processes in determining the credibility of the witnesses, was referring to his making of more or less standard tests as to motives or lack of them, and was comparing what the prosecuting witness said he did, with what experience has taught was likely to have been done or not to have been done, under similar circumstances and motives.

The court found that Wehland and Miller and their confrères in the political party opposing the party to which Moxley belonged, undoubtedly were highly pleased with the opportunity they sensed in Reid's charges to discredit Moxley and enthusiastically facilitated the charges being brought to prosecution. He found also, however, that Reid had no animus or strong feelings against Moxley or motive for prosecuting him and no evidence whatever of pre-arrangement with the opposition political party or plan to "frame" the appellant. After having carefully weighed all of the evidence and all of the inferences from it, the trier of the facts came to the belief that Reid was telling the truth and announced that "with great reluctance * * * with all reluctance" he was unable to arrive at any verdict but guilty.

We think, as we have indicated, that the evidence clearly permitted the finding the court made and, this being so, we have no further function in the case. Under the rules we do not pass on the weight of the evidence or determine whether we would have arrived at the same verdict as the trial court, but merely decide whether there was sufficient evidence to sustain the verdict. *Clay v. State,* 211 Md. 577; *Basoff v. State,* 208 Md. 643; *Estep v. State,* 199 Md. 308. Here there was such evidence.

*Judgment affirmed, with costs.*