## JUDY *v.* STATE

[No. 29, September Term, 1958.]

170

The cause was argued before BRUNE, C. J., and HENDER-
SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Gilbert S. Birnbach* for the appellant.

*Clayton A. Dietrich, Assistant Attorney General,* with
whom were *C. Ferdinand Sybert, Attorney General, J. Har-
old Grady, State's Attorney for Baltimore City,* and *James
W. Murphy, Assistant State's Attorney,* on the brief, for the
appellee.

HORNEY, J., delivered the opinion of the Court.

A jury found Jesse Casper Judy (Judy *or* the defendant)
guilty of an attempt to rob with a dangerous and deadly
weapon, and he was sentenced by the Criminal Court of
Baltimore to the maximum penalty of twenty years. This
appeal is from the judgment and sentence.

On January 4, 1956, at 9:20 p.m., an attempt was made to
hold up the Shell Service Station in the 1300 block of Wash-
ington Boulevard in Baltimore City. The proprietor, James
E. Grice (Grice *or* the victim), was working in the grease
pit at the station when he was approached by Leo Hays
(Hays *or* the accomplice), and was told that the accomplice's
automobile had broken down. As Grice came into the sta-
tion office Hays, who was in the company of another person,
drew a pistol from his jacket and attempted to rob Grice.
The other person did not do or say anything at the time to
either Grice or Hays. When the pistol was drawn, Grice
tussled with Hays, and the other person fled. After sub-
duing Hays, the police were called. For three days after his

arrest Hays insisted that he acted alone at the scene of the attempted robbery. Subsequently, when he realized that Judy by fleeing had let him down, he identified the defendant as the person who had been with him during the episode. The accomplice testified that he and the defendant had been drinking in a tavern in West Baltimore all day, that the defendant had given him a pistol which he kept on his person the entire day, and that in the evening of the same day they left the tavern together and walked to the service station. There is a conflict in the testimony as to what transpired in the tavern with regard to planning the crime. Hays testified that the defendant had participated in the conception of and preparation for the robbery, and that he and the defendant had a prior understanding to the effect that they were going to hold up the service station for money and that neither would reveal the other's identity in the event either was apprehended by the police. On the other hand, the defendant, although he admitted that he was in the tavern with Hays, denied drinking with him and that he had left the tavern with him. He said he left alone between 10:30 and 11 p.m. and visited several other taverns in an effort to buy more to drink but was refused, and that he finally went home to bed around 2 or 2:30 a.m. the next day. He further testified that he left Baltimore believing the police were looking for him on a nonsupport charge. The defendant was apprehended in Pine Bluff, Arkansas, in June of 1957, but denied any knowledge of the robbery except what he had read in the newspapers. At the trial both the victim and the accomplice identified the defendant as the person who was immediately behind the accomplice at the scene of the attempted robbery. Hays had been previously tried and convicted of attempted robbery and, at the time of the trial of the defendant, was serving a twenty year sentence in the Penitentiary.

During the course of the trial, the accomplice was finally permitted to testify, over a series of objections made by the defendant, that three days after his arrest he had identified a photograph of the defendant for the police from among other photographs. The State contends that the defendant's objections to every phase of this part of the testimony were

expressly limited to the hearsay aspect of such testimony, and for that reason cannot raise new and additional grounds in this Court. The defendant insists that his objections were intended to preclude the introduction of any testimony of the previous identification by the accomplice out of the presence of the defendant on the ground that it was not only hearsay but was unfair and unreliable. We think that the objections to the admissibility were broader than that it was hearsay, so we shall assume there was a general objection—indeed the record indicates there may have been a general objection—and consider the question or point of law presumably posed by the objections.

At the conclusion of the evidence offered by the State, the defendant moved for a directed verdict of not guilty on the ground that the evidence was insufficient in law to show that he had in any way participated in, encouraged, prompted or lent moral support to the perpetration of the attempt to rob charged in the indictment or that he participated in a conspiracy to commit the offense alleged therein. The motion was denied. The defendant offered evidence in his defense. But at the close of the whole case, he renewed the motion. It was again overruled by the trial court. The defendant contends that the court erred in refusing to grant the motion for a directed verdict.

### (i). Extrajudicial Identification.

It was proper to permit the witness, who had on a previous occasion identified a photograph of the defendant, to subsequently testify in court as to such previous identification. The authorities are by no means in agreement as to the propriety of permitting evidence of extrajudicial identification in a trial where the identity of the accused is an issue. Formerly the general rule was that such testimony was inadmissible as hearsay. The courts are still divided on the question, but, in recent years, the rule had been extensively relaxed. Now testimony as to extrajudicial identification is admissible in many jurisdictions both as substantive and corroborative evidence. See 20 Am. Jur. *Evidence* § 353; 22 C. J. S. *Criminal Law* § 725; 1 Wharton, *Criminal Evidence* (11th ed.

1935) § 439; Note entitled "Criminal Law-Evidence-Testimony of Extrajudicial Identification," 36 Minn. L. Rev. 530 (1952). See also Note, 27 N. Y. U. L. Rev. 367 (1952). By statutory enactment in some jurisdictions, testimony of a previous identification constitutes substantive proof of identification. See *People v. Spinello,* 303 N. Y. 193, 101 N. E. 2d 457 (1951); 1 Wharton, *Criminal Evidence* (12th ed. 1955) § 181.

In this State, the modification of the strict general rule is evident. In *Blake v. State,* 157 Md. 75, 145 A. 185 (1929), we adhered to the former rule that evidence of an extrajudicial identification was hearsay. In that case the victim of a rape who had identified a photograph of the accused out of his presence had also identified him in his presence. A majority of the Court took the view that the testimony of a police officer concerning the statement made by the prosecutrix when she saw the accused at the police station "was a reproduction of statements as proof of the facts asserted [by her], and should have been excluded as hearsay testimony." Judge Parke, in a dissenting opinion,[1] would have allowed the testimony to stand because as he stated (at p. 85) "the best evidence of identification is usually the first identification." Chief Judge Bond, who wrote the majority opinion, concurred with Judge Parke on this point because he believed that the testimony of the officer should have been regarded as a reply to the attack on the ability of the prosecutrix to identify the accused with certainty rather than as hearsay. After the lapse of approximately thirty years, this Court, by its decision in *Basoff v. State,* 208 Md. 643, 119 A. 2d 917 (1956), substantially modified its former rule as to extrajudicial identification when we declared (at p. 650) in a unanimous opinion written by Judge Delaplaine:

> "[W]e accept the rule that where it appears that the prosecuting witness had identified the accused

---

1. It is interesting to note that the dissenting opinion of Judge Parke was cited by Wigmore in § 1130 of the third edition (1940) of his work on *Evidence* as authority for permitting testimony of extrajudicial identification.

prior to the trial under circumstances precluding suspicion of unfairness or unreliability, the prior identification is admissible in evidence."

From what we said in the *Basoff* case it is clear we now recognize that an extrajudicial identification of the accused made under proper circumstances may be admitted in evidence as an exception to the hearsay rule, and, if admitted, would constitute corroborative evidence. The reason for the holding as stated in the *Basoff* case, at p. 651, is:

"[I]t is evident that an identification of an accused made by a witness for the first time in the courtroom may often be of little testimonial force, as the witness may have had opportunities to see the accused and to have heard him referred to by a certain name; whereas a prior identification, considered in connection with the circumstances surrounding its making, serves to aid the court in determining the trustworthiness of the identification made in the courtroom."

See also *State v. Frost,* 105 Conn. 326, 135 A. 446 (1926); 4 Wigmore, *Evidence* (3d ed. 1940) § 1130.

Since it is clear that the testimony of a police officer in a criminal case to the effect that another witness identified a photograph as that of the accused is admissible as an exception to the hearsay rule [*Basoff v. State, supra*], we see no reason why a witness, even though he be an accomplice, who had on a previous occasion identified a photograph of the defendant, should not testify in court as to such extrajudicial identification. It should be admitted for the purpose of corroborating the witness and bolstering his credibility, if for no other purpose. Indeed, we are of the opinion that the mere relation by a witness of a previous act of identifying a photograph of a person he knew or recognized is not hearsay, that it is admissible as substantive evidence, and that it is not subject to the preliminary inquiry as to unreliability or unfairness. Evidence is hearsay only when it derives its value, not solely from the credit given to the witness himself, but in part from the veracity and competency of another

person. 20 Am. Jur. *Evidence* § 451. However, if the witness is an accomplice, and the identity of the accused is an issue, it would be necessary to corroborate such identification as one of the material points of the accomplice's testimony requiring corroboration. In the instant case there was corroboration of the identity of the defendant by the victim.

What Professor Morgan said in his article on *Hearsay Dangers,* 62 Harv. L. Rev. 177 (1948), at p. 192, is peculiarly pertinent to the question now before us.

> "When the Declarant is also a witness, it is difficult to justify classifying as hearsay evidence of his own prior statements. * * * The courts declare the prior statement to be hearsay because it was not made under oath, subject to the penalty for perjury or to the test of cross-examination. To which the answer might well be: 'The declarant as a witness is now under oath and now purports to remember and narrate accurately. The adversary can now expose every element that may carry a danger of misleading the trier of fact both in the previous statement and in the present testimony, and the trier can judge whether both the previous declaration and the present testimony are reliable in whole or in part.' "

In *Williams v. State,* 152 Ga. 498, 110 S. E. 286 (1922), an accomplice testified as to the identification of the dead bodies of certain persons whom the defendant was charged with killing. He further testified that he had previously identified the corpses for the sheriff. There was an objection on the ground that such declaration was hearsay and irrelevant, but it was held that such testimony was properly admitted for the reason that an extrajudicial identification is incompetent only when testified to by another than the witness who made the identification. See also *People v. Sieber,* 201 Cal. 341, 257 P. 64 (1927), [witness permitted to testify concerning previous identification of accused whom he had seen near scene of homicide]. Cf. *Thomas v. State,* 186 Md. 446, 47 A. 2d 43 (1946), in which we held that where a witness has made a written confession that he com-

mitted the crime with which the defendant is charged, the defendant has a right to question the witness in regard to the confession and the circumstances under which it was made.

We hold that the testimony of the accomplice that he had previously identified a photograph of the defendant was admissible. The weight which should be given to such evidence, if any, was for the jury to decide.

### (ii). Denial of Directed Verdict.

The trial court did not err when it refused to grant the defendant's motion for a directed verdict of not guilty. It is true, of course, that mere presence at the scene of the crime did not in itself constitute the defendant a principal or an accessory before the fact, but his actual presence was one of several factors, including the defendant's denial that he was present, which the jury was entitled to consider in arriving at its verdict. In essence the defendant's argument is double-barreled: (i) he contends there is no evidence that he participated in the crime in any manner, which ignores the testimony of the accomplice, and (ii) he insists the accomplice's testimony was not sufficiently corroborated, which ignores the testimony of the corroborating witnesses. Neither is persuasive. The remainder of his argument on this point was devoted to a discussion of the law concerning aiders and abettors.

The evidence shows that the accomplice identified the defendant both before and at the trial, placed him at the scene of the attempted robbery, and implicated him in the attempt to rob. The testimony of the accomplice was corroborated by the victim on some of the material points involved, to some extent by the police detective, and unintentionally no doubt, by the acts and words of the defendant himself. It is not necessary for corroborating testimony to be sufficient in itself to convict. Instead it need only support some of the material points of the accomplice's testimony. *Polansky v. State,* 205 Md. 362, 109 A. 2d 52 (1954) ; *Wolf v. State,* 143 Md. 489, 122 A. 641 (1923). The necessity for corroboration does not extend to every detail. *Novak v. State,* 214 Md. 472, 136 A. 2d 256 (1957) ; *Brown v. State,* 210 Md. 301,

123 A. 2d 324 (1956). Since there was legally sufficient evidence that the defendant was present and participated in the offense charged, we cannot rule as a matter of law that the case should not have been submitted to the jury.

The trial judge properly instructed the jury concerning the characteristics of the testimony of the accomplice, the necessity of corroborating the accomplice's testimony, and as to the defendant's alleged absence, and, in the alternative, his presence at the scene and participation in the attempted robbery. The jury was also instructed as to the burden of proof and the presumption of innocence until that presumption is overcome by proof of guilt beyond a reasonable doubt. There were no objections to the court's instructions. Thus, it appears the question of the innocence or guilt of the defendant was squarely before the jury on both the law and the evidence.

The weight of the evidence and whether there is proof beyond a reasonable doubt are always matters for the jury to determine when it is the trier of the facts. *Daniels v. State,* 213 Md. 90, 131 A. 2d 267 (1957), and cases therein cited. See also *Midgett v. State,* 216 Md. 26, 139 A. 2d 209 (1958). The State's evidence, if believed, and it obviously was, was sufficient to warrant the jury finding a verdict of guilty, which it did.

*Judgment affirmed.*