WHITE *v.* STATE

[No. 130, October Term, 1953.]

*Decided May 5, 1954.*

The cause was argued before BRUNE, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*J. Gilbert Scarborough,* with whom was *Henry L. Constable* on the brief, for the appellant.

*Ambrose T. Hartman, Assistant Attorney General,* with whom were *Edward D. E. Rollins, Attorney General,* and *J. Albert Roney, Jr., State's Attorney for Cecil County,* on the brief, for the appellee.

DELAPLAINE, J., delivered the opinion of the Court.

Robert Roy White was indicted by the grand jury of Cecil County for violating the statute making it unlawful to make or sell a book or pool on the result of any horse race. Code 1951, art. 27, sec. 306. On September 25, 1953, he filed a motion in the Circuit Court for Cecil County to quash the indictment. He contended that the acts he was alleged to have committed in July, 1953, did not constitute crimes because bookmaking was not a crime in Cecil County at that time. His motion was overruled.

On October 14 defendant was tried before a jury and found guilty. On October 26 the trial judge sentenced him to pay a fine of $1,000 and to be confined in the Maryland House of Correction for one year, but suspended the latter part of the sentence and placed him on probation under supervision of a parole officer. Defendant appealed from the judgment of conviction.

Defendant's first contention is that the trial judge erred in overruling his motion to quash the indictment, because Cecil County was exempt in July, 1953, from Section 306 of Article 27 of the Code. We must reject that contention. The same contention was made by the appellant in *Gibson v. State,* 204 Md. 423, 104 A. 2d 800, and we held in that case that Cecil County was not exempt from the statute, at least on and after June 1, 1953.

Defendant's second contention is that the testimony of Frank R. Diggins, a detective, as to conversations he had heard by tapping a telephone wire was inadmissible. It appears that early in July, 1953, Diggins, who operates a private detective agency in Baltimore, was employed at the request of the State's Attorney of Cecil County, to investigate bookmaking in that County. On July 21 he arrived in the vicinity of the Richmond Hill Cabins located near the Susquehanna River Bridge at Perryville. He observed a Buick automobile parked next to a cabin on the extreme right end of the cabins. He learned that this cabin was occupied by defendant. He then found defendant's telephone number to be 5-100, and he tapped the telephone wire leading to that number. He heard unidentified persons making bets on horses running at the Jamaica race track. One of the bets was taken by a man called "Whitey." Another bet was taken by an unidentified woman.

The detective testified that on July 28 he made a trip to the cabins. Just before noon on that day he saw a man drive a Buick automobile out of the driveway. He followed the automobile until it came to a stop at the Pennsylvania Railroad station in Perryville. He then saw defendant get out of this automobile and approach two other men. When a train arrived at about 12 o'clock, a man tossed a package out of the mail car to a man wearing a white cap. The man caught the package and tore it open. The detective testified that he could see that the package contained Armstrong scratch sheets. The man handed one of the scratch sheets to defendant,

who then went back to his automobile and drove away. The detective followed defendant and saw him return to the cabin. At 12:20 o'clock defendant came out of the cabin again, got in his automobile, and drove to Havre de Grace, where he entered a tavern on St. John Street. About five minutes later he came out of the tavern and again entered his automobile. The detective followed him to a house on Union Avenue in Havre de Grace. Defendant entered this house at 12:40, came out at 1:20, and then drove back to the cabin in Perryville.

These observations were used as the basis for a search warrant, which was secured by the Sheriff of Cecil County on August 22 to search the cabin occupied by defendant. The sheriff requested the assistance of the State police in conducting the search. At about 3 o'clock on that day four officers went to the Richmond Hill Cabins, and entered the cabin occupied by defendant. In this cabin were two telephones bearing numbers 5-100 and 5-300. When the telephones rang, the officers answered the calls. In the bathroom they found a lot of slips containing the names of horses and the sums of money bet on them.

Defendant argued that the detective's testimony as to the telephone conversations was inadmissible because defendant was not identified as the recipient of the telephone calls. The generally accepted rule of evidence has been adopted in this State that in order to render the evidence of a telephone conversation of a witness admissible, some preliminary testimony, either direct or circumstantial, must be presented to establish the identity of the other person to the conversation. *Archer v. State,* 145 Md. 128, 149, 125 A. 744; *Dorchester Trust Co. v. Casey,* 268 Mass. 494, 176 N. E. 178, 71 A. L. R. 1; *People v. Thompson,* 231 Mich. 256, 203 N. W. 863; *People v. Powloski,* 311 Ill. 284, 142 N. E. 551; *Andrews v. United States,* 10 Cir., 78 F. 2d 274, 105 A. L. R. 322; 1 *Wharton, Criminal Evidence,* 11th Ed., sec. 379.

The reason for this general rule is that if a party could be held responsible for statements made by a person

who has not been identified, the door would be open for fraud and imposition. Professor Wigmore urged many years ago that it should be sufficient to rely on the mercantile experience by which customarily the person who is in fact summoned to the telephone and proceeds to conduct the negotiation is *prima facie* a person authorized to do so. 7 *Wigmore* on *Evidence*, 3d Ed., sec. 2155. In line with that suggestion, the Maryland Court of Appeals, speaking through Chief Judge Boyd in *Knickerbocker Ice Co. v. Gardiner Dairy Co.*, 107 Md. 556, 572, 69 A. 405, gave approval to the liberal view that, as an exception to the general rule, a witness may testify as to a telephone conversation with a person who "does not purport to be a particular person, but merely some member of the office staff authorized to make a contract or an admission." The question in that case was whether there was sufficient proof that the person who answered the telephone in the office was someone who was actually authorized to make the contract or merely an unauthorized clerk, bystander or intruder. The Court held that where one phones the office of a corporation and is answered by a person who says that he represents that corporation, and proceeds to conduct a negotiation, the presumption is that such person is authorized to act, although he is not recognized or known by the witness.

In *Robinson v. Lancaster Foundry Co.*, 152 Md. 81, 136 A. 58, 50 A. L. R. 1196, the Court held that the presentment of a note for payment cannot be made by telephone. But it was explained in that case that the person in an office who responds to a telephone call may generally be assumed to be someone employed for the purpose for which the call was made, but not to be an employee to whom a corporation has delegated the duty of paying its maturing negotiable instruments.

In *Annapolis & Chesapeake Bay Power Co. v. State, to Use of Smith*, 152 Md. 241, 136 A. 615, the Court held admissible the testimony as to telephone calls to a trouble station to warn the power company of the danger of a live wire, although there was no identifica-

tion of the voice receiving the message, where the witness used the telephone book to be certain of the correct telephone number, and was informed by the person receiving the call that it was the trouble station and that an employee would be sent. The Court said that it was the duty of the power company to have a responsible employee to answer such telephone calls, and that, as distinguished from a criminal prosecution, the identification of the person who received the message was not vital.

In *Baum v. State*, 163 Md. 153, 161 A. 244, this Court held that where the identity or authority of a person with whom a witness conversed on the telephone is not in dispute, the testimony as to the telephone conversation may be admissible even in a criminal trial. In that case the police officer conversed with an unidentified man who answered the telephone at 129 West Mt. Royal Avenue in Baltimore, which was alleged to have been used for bookmaking. The Court held that the officer's telephone conversation was admissible for the purpose of showing that the officer placed a bet on a horse race with an unidentified man who answered the telephone in that particular house.

In *Courtney v. State*, 187 Md. 1, 48 A. 2d 430, we held that a police officer, who had entered a house used for the purpose of gambling, could testify that he answered the telephones in the house and that bets were placed with him by unidentified persons calling from unidentified places.

In *Colie v. State*, 193 Md. 608, 69 A. 2d 497, we recognized the general rule that in order to introduce a telephone conversation in evidence against the person at the other end of the line as the conversation of that person, it is necessary to identify him, but we held that where the purpose of the evidence is merely to show that the police placed a bet with a person who answered a certain telephone number given them by the accused, who told them that bets could be placed there, no identification of the person answering the telephone is necessary.

In the case at bar the detective did not converse on the telephone with anyone in the cabin. His testimony was obtained by means of wire tapping. However, as we pointed out in *Bratburd v. State,* 200 Md. 96, 88 A. 2d 446, *certiorari* denied, 344 U. S. 908, 73 S. Ct. 327, 97 L. Ed. 700, the United States Supreme Court in the landmark opinion on wire tapping, *Olmstead v. United States,* 277 U. S. 438, 48 S. Ct. 564, 72 L. Ed. 944, 66 A. L. R. 376, decided that the guarantee in the Fourth Amendment of the Constitution of the United States against unreasonable search and seizure, while extending to sealed letters in the mail, does not extend to telephone or telegraph messages, and therefore the use of evidence of private conversations intercepted by means of wire tapping does not infringe any constitutional right. In that opinion Chief Justice Taft divided the problem under three heads. First, the overhearing of a telephone conversation was not a "search" or "seizure" within the meaning of the Fourth Amendment. Secondly, the testimony did not become inadmissible on common-law grounds merely because illegal, assuming that it was. Thirdly, unethical methods of obtaining evidence do not afford ground for excluding it. It is also established that the Federal Communications Act does not render inadmissible in a trial in a State court any evidence secured as a result of wire tapping of an intrastate telephone communication. *McGuire v. State,* 200 Md. 601, 92 A. 2d 582, *certiorari* denied, 344 U. S. 928, 73 S. Ct. 497, 97 L. Ed. 714; *Schwartz v. State of Texas,* 344 U. S. 199, 73 S. Ct. 232, 97 L. Ed. 231.

Defendant relied on *Rowan v. State,* 175 Md. 547, 3 A. 2d 753, wherein we held that telephone conversations about bets on horse races, which were obtained by an employee of the telephone company by tapping the telephone line, were inadmissible. That case is not controlling here. The reason for that decision was that the telephone employee was not called as a witness, and the woman who gave him the defendant's telephone number was not identified.

450

The situation here is like that in *Beard v. United States,* 65 App. D. C. 231, 82 F. 2d 837, 841. The purpose of the testimony, as in that case, was not to fasten the conversations on any particular person, but was introduced merely to show that the cabin which the officers afterwards raided was a gambling place and that it was then being used for gambling. For that purpose the evidence was admissible as a part of the *res gestae.* It was unnecessary to produce preliminary testimony to establish the identity of the persons who accepted the bets over the telephone.

As we have not found any reversible error in the rulings of the trial court, we will affirm the judgment.

*Judgment affirmed, with costs.*