THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RICHARD LEE MARTIN *et al.*, Defendants-Appellants.

Second District  Nos. 76-220, 76-221 cons.

Opinion filed May 4, 1978.

Ralph E. Madsen, of Crystal Lake, for appellants.

John H. Maville, State's Attorney, of Belvidere (Phyllis J. Perko and Robert J. Anderson, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE GUILD delivered the opinion of the court:

The two defendants herein were separately indicted in two count indictments, the first count of which charged the offense of arson (Ill. Rev. Stat. 1973, ch. 38, par. 20—1(a),) and the second count, charging arson with intent to defraud an insurer (Ill. Rev. Stat. 1973, ch. 38, par. 20—1(b)). The two cases were consolidated for trial. At the conclusion of the State's case the trial court directed a verdict as to both defendants as to count II. The jury found both defendants guilty of arson and they were each sentenced to 2 years' probation. They both appeal.

On October 25, 1974, Ilene Rollins was the contract purchaser of a residence in Belvidere from Mark Hasselbring. The contract provided for the total sales price of $19,000, the payment of $3000 down and payments of $155 a month. Mrs. Rollins made the payments up to and including her payment on June 28, 1975. The contract seller testified that he carried the insurance on the property in the sum of $20,000 and that the contract did not provide for Mrs. Rollins to carry any insurance. On April 1, 1975, Mrs. Rollins took out a $20,000 homeowner's policy on the premises in question, $2000 on an attached structure and $10,000 on the personal property therein and $4000 additional living expense and liability coverage. On July 26, 1975, the premises were destroyed by fire.

A friend of the daughter of Mrs. Rollins who moved into the premises in July 1975 testified that Mrs. Rollins, Mrs. Rollins' daughter Shirley and her children, and part of the time Richard Martin, had been residing in the premises but they had moved out and Shirley had asked the witness to

move in with her. About a week after she moved in Richard Martin moved a "bunch" of furniture out of the house, including the washer and dryer, and "they took a whole truckload of stuff."

Terry De Leon, a daughter of Mrs. Rollins, testified that she had resided in the premises in question until July 1975 when she, Mrs. Rollins, her grandmother and her sister's children went to Missouri. While in Missouri she heard her mother and Mr. Martin discuss that they wanted to burn the house down. They returned to Illinois a day or two before the fire and then returned to Missouri on the night of the fire. The witness further testified as to a letter received from her mother who was in jail. The letter itself was admitted into evidence and we will refer to its contents later.

Shirley Brooks, the other daughter of Mrs. Rollins, testified that she had resided in the property in question until July 1975 with her mother, her sister and their respective children. Her mother asked her if she could burn the house down and she replied that she would not do so. She moved out of the property in question on Wednesday or Thursday when the electricity was shut off. She saw her mother on Friday night and her mother wanted her to stay away from the house for a few days and see what was going to happen. She testified that she smelled kerosene in the house when she returned on Friday night to get some of her belongings. On cross-examination she testified that she had observed what appeared to be a film of kerosene on the coffee table and on the windowsill.

Robert Hurley testified that he went to Steelville, Missouri, where he stayed with Ilene Rollins and Richard Martin. While in Missouri Richard Martin asked him if he wanted to burn the house down and that Martin and Rollins said they wanted to burn it down "for the insurance mostly." They all left Missouri on July 25 and returned to Belvidere. On Friday evening Ilene Rollins, Richard Martin and he went to the premises and removed personal belongings from the house. They did the same thing on Saturday morning and packed the belongings in their car. He and Richard Martin then returned to the residence in question on Saturday afternoon, spread gasoline in the bedroom, master bedroom, living room, the upstairs and basement stairways, turned on the gas burners of the kitchen stove on low and left the house. The three of them returned about 9:30 or 10 Saturday evening and Martin and Hurley entered the premises, went to the basement, ignited the gasoline on the basement stairs, returned to the motor vehicle and then drove through back roads to Route #20 and back to Missouri. Mrs. Rollins and Martin stated to him that he would be well taken care of and nothing was said about being caught. Hurley further testified that he had been charged with arson, that he had entered into plea negotiations, that if he were to testify for the People that charges would be reduced to criminal damage to property exceeding $150 and he would be sentenced to 2 years' probation. Defense counsel sought to

introduce evidence that Robert Hurley had been charged with aggravated battery which was pending at the time of this trial. The court refused to allow the defense counsel to cross-examine him on this pending charge but counsel was permitted to inquire as to the factual incidents relating to the pending charge with no direct reference to the criminal charge then pending. The court refused to allow the evidence of the formal charge to be admitted as the same did not constitute a conviction.

Both defendants testified in their own behalf. In substance their testimony was about their physical activities, starting with July 3 to and including the time of the fire, and corroborated the testimony of the State's witnesses. Both, however, denied setting fire to the premises and denied asking Mrs. Rollins daughter, Shirley, or Robert Hurley to do so. They both denied the testimony of Mrs. Rollins' daughters and Robert Hurley as to this issue. Mrs. Rollins testified that, in her opinion, the State should have inquired of her husband, whom she alleged burned the house down for spite. Mrs. Rollins further testified as to her financial problems.

■ ■ ■   The import of the first contention of counsel for the defendants is that reversible error was committed by the trial court in not granting a mistrial after the verdict of acquittal by the court as to count II and the jury were therefore allowed to consider evidence pertaining to the insurance obtained by defendant Rollins and defendants' financial condition. This argument is without merit for two reasons. First, while it is not necessary to establish motive in an arson case, evidence as to motive is not inadmissible and it is obvious, on a complete examination of the record, that the motive was, in fact, established by the evidence pertaining to the insurance and the financial condition of the defendants. Second, the trial court was in error in entering a verdict of acquittal as to count II, which charged arson with intent to defraud the insurer. This error was conceded by defense counsel in oral argument. The trial court, as the basis for its directed verdict for acquittal, stated that inasmuch as no demand had been made upon the insurer by the defendants, the State had failed to prove its case in this regard. Phrased differently, the ruling of the trial court was that in order to substantiate a charge of arson with intent to defraud the insurer, the State must prove that a demand for payment was made upon the insurer. Our research has disclosed no case directly in point as to this issue. We hold that the decision of the trial court was incorrect. The fire was started on July 26, 1975, the defendants were questioned on July 28, 1975, and were arrested within a day or two from that date. It is obvious that no opportunity was afforded the defendant Rollins to make a demand upon the insurer. The record also discloses that both defendants were in apparent financial difficulty and that in April 1975 the defendant Rollins took out a fire insurance policy on the house in

the sum of $20,000. The purchase price of the house was $19,000 and the owner of the premises had an existing policy of $20,000. The policy obtained by Mrs. Rollins also included $10,000 for the loss of personal property. The record discloses that much of the personal property on the premises was removed by the defendants immediately prior to the fire. The defendant had made her payments on the purchase under contract from the seller up to and including the first of July 1975. Therefore, she was not in default on the contract. Terry De Leon, one of Mrs. Rollins daughters, testified that the defendants told her they wanted to burn the house down. Another daughter, Shirley Brooks, testified that her mother asked her if she would burn the house down and she told her that she would not in a conversation which took place 2½ months prior to the fire.

While in jail, defendant Rollins wrote a letter to Shirley which was to be delivered to her by Terry. However, Terry turned the same over to the police. This letter was introduced into evidence. In the letter Mrs. Rollins asked that a friend of Shirley's and Shirley go to a third party and have him write a letter to the police that "I was hired to wipe out Mrs. Rollins' house * * *." She included a copy of the letter which the third party was to copy and then destroy after he had memorized the same. She included in her letter a statement that the third party was to turn over to the police a note alleged to be from her estranged husband, stating "I will pay you $500 for this job at 815 South State * * * (signed) RON ROLLINS." Included with this correspondence Mrs. Rollins asked that her daughter Shirley tell the State's Attorney that: "Ron is threatening you. If you involved him in this." It should be noted that the third party mentioned in this letter was not Robert Hurley.

In addition to the above, Robert Hurley testified to the conversation between himself, Richard Martin and Mrs. Rollins wherein they told him that they were going to burn the house down "for the insurance, mostly." We, therefore conclude that more than sufficient evidence was disclosed which would justify the submission to the jury of the question of whether the defendants were guilty of arson with intent to defraud the insurer. For the above reasons, we reiterate that the trial court was in error in entering a verdict as to count II of the indictments charging arson to defraud an insurer and that such evidence was properly before the jury as to count I, which charged arson.

■■ The second contention of the defendants is that the trial court erred in prohibiting cross-examination of the State's witness, Robert Hurley, regarding charges of aggravated battery pending against him at the time of the trial herein. We do not find this to be error. Hurley testified that he had not negotiated with the State's Attorney with regard to the pending charge. For a ruling on this question the trial court heard testimony from the witness Hurley, outside the presence of the jury, that he had no

expectation of leniency from the State with regard to this charge. As there was no showing of an expectation of leniency, cross-examination on the pending charge would not have tended to show bias in the instant case. Under these facts, the court was not in error in prohibiting defense counsel from bringing in evidence of pending charges unrelated to the instant offense.

■■ The third contention of the defendants is that the trial court should have granted a new trial because the fire marshal testified that the defendant Martin had been requested to take a polygraph test. An immediate objection was made and the court ruled the objection sustained and the jury were instructed to disregard the statement. No further testimony in this regard is disclosed in the record. There is nothing in the record to suggest that the prosecutor deliberately elicited the improper reply testimony or that he had any prior knowledge that the witness would so testify. In *People v. Melquist* (1962), 26 Ill. 2d 22, 30, 185 N.E.2d 825, 829, a newspaper reporter, in testifying for the State, stated that the defendant was asked, "[i]f you were guilty, why did you take a lie test?" The supreme court held that:

> "* * * the reply of the witness was not a sufficient ground for declaring a mistrial, even though it conveyed to the jury the impression that the defendant had taken a lie-detector test."

In *People v. Flowers* (1958), 14 Ill. 2d 406, 152 N.E.2d 838, one of the witnesses testified that he was the chief polygraph examiner for the State Bureau of Identification. He testified that a statement was made by the defendant. This statement was not taken during the lie detector test. The court held that this evidence does not suggest a lie detector test to the jury to the prejudice of the defendant. The mere fact that the witness volunteered that he was a polygraph examiner did not negate the fact that he had other duties with the State Bureau of Identification and the fact that he was a polygraph examiner did not suggest a lie detector test to the jury, to the prejudice of the defendant.

We find that in the instant case the court sustained the objection to the statement which the fire marshal volunteered that "sometime during the conversation we asked him if he would take a polygraph test." No other testimony in this regard was adduced and the court instructed the jury to disregard this statement. We are of the opinion that the error here, if any, is harmless and is certainly not reversible error.

■■ The fourth contention of the defendants raised in their reply briefs, is that the trial court erred in allowing the State to read, verbatim, to the jury in final argument the correspondence written by defendant Rollins against her interests after the court had ruled that the statement could not be read to the jury at the time of its introduction. In the defendants' brief no argument was presented as to this contention. Supreme Court Rule

341(e)(7) (Ill. Rev. Stat. 1973, ch. 110A, par. 341(e)(7)) specifically provides with relation to the contents of briefs submitted on appeal, that,

> "Points not *argued* are waived and shall not be raised in the reply brief, in oral argument, or on petition for rehearing." (Emphasis added.)

For this reason, we refuse to consider this contention which we find to be without merit, particularly in view of the fact that the statements to the jury were not transcribed for our examination.

In conclusion, we find that the evidence of the guilt of the defendants in this case is overwhelming. Finding no error, we therefore affirm.

Affirmed.

NASH and RECHENMACHER, JJ., concur.