519 A.2d 811

**Thomas Leonard KNOEDLER**

v.

**STATE of Maryland**

**No. 536, Sept. Term, 1986.**

Court of Special Appeals of Maryland.

Jan. 14, 1987.

Michael R. Braudes, Asst. Public Defender (Alan H. Murrell, Public Defender, on brief), Baltimore, for appellant.

Ann E. Singleton, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen., Baltimore), Sandra A. O'Connor, State's Atty. Baltimore County and Thomas Basham, Asst. State's Atty. Baltimore County, on brief, Towson, for appellee.

Submitted before WILNER, WEANT and BISHOP, JJ.

WILNER, Judge.

On the evening of February 28, 1981, a fire was discovered in the master bedroom of appellant's apartment at 6713 Havenoak Road in Baltimore County. Three months later, appellant was charged in a five-count criminal information with four counts of arson under Md.Code Ann. art. 27, §§ 6, 7, and 8, and one count of willfully setting a fire with intent to defraud an insurance company (art. 27, § 9).

The State eventually nol prossed three of the arson counts. After a non-jury trial in February, 1982, the Circuit Court for Baltimore County convicted appellant of the remaining count of arson—maliciously setting fire to his own dwelling house—but acquitted him of the insurance fraud. Four years later, it sentenced him to five years in prison.[1] Hence, this appeal, in which appellant argues that the trial court erred:

(1) "in permitting a witness to testify as an expert where the State failed to disclose in discovery that the witness would testify as an expert."

(2) "in admitting evidence of Appellant's financial circumstances."

---

1. It appears that appellant eloped while on bail, leaving with his brother what purports to be a suicide note. The hiatus between conviction and sentencing is not an issue in this case.

(3) "in admitting evidence of alleged statements made by Appellant during the course of a telephone conversation in the absence of a foundation establishing that Appellant was the person who made the statements."

and

(4) "in its admission of documentary evidence."

We find no reversible error in any of those respects, and so shall affirm.

### (1) *The Unrevealed Expert*

Appellant's first complaint concerns the testimony of County Fire Department Captain Jerry Zwick. Captain Zwick, one of the first firefighters to arrive at the scene, testified without objection to what he observed, including that the back bedroom had sustained substantial damage. The objection came when he began to describe the concept of "flashover," which he defined as "the point in time where all of the combustibles within a room reach their ignition point" and "spontaneously burst into flames." When the prosecutor asked whether that flashover had been reached when the "nozzle crew" arrived, appellant objected on the ground that "[s]o far I've heard the only person to be an expert in this case is the Inspector Ruley."

The State then proceeded to interrupt the examination and qualify Captain Zwick as an expert. At the conclusion of that voir dire, the court afforded appellant an opportunity to cross-examine on Zwick's qualifications, whereupon counsel said that he had no cross-examination—that "[t]he concern I have is now we have another individual now testifying as an expert on behalf of the State with no prior notice that this individual would be testifying as an expert and rendering an expert opinion."

The objection was overruled and Captain Zwick was permitted to testify as an expert. He stated that the fire started right below the bedroom window and that he could not find anything in that area to indicate that it had started accidentally.

■ Appellant's sole complaint here is that the State failed to disclose Captain Zwick as an expert witness, a failure that he deems violative of Md. Rule 4–263. We see no violation and no error.

Md. Rule 4–263(b)(1) requires the State, upon request, to disclose the name and address of "each person then known whom the State intends to call as a witness at the hearing or trial to prove its case in chief or to rebut alibi testimony." Section (b)(4) of the Rule requires the State, upon request, to "[p]roduce and permit the defendant to inspect and copy all written reports or statements made in connection with the action by each expert consulted by the State ... and furnish the defendant with the substance of any such oral report and conclusion...." Nothing in these sections (or any other sections) of the Rule requires the State to categorize its proposed witnesses as expert or non-expert.

Captain Zwick was listed as a witness on the Criminal Information. In June, 1981, appellant requested the information allowed under Rule 4–263(b)(1) and (4), to wit:

"2. Disclose the name and address of each person whom the State intends to call as a witness at a hearing or trial to prove its case in chief."

and

"8. Produce and permit the Defendant to inspect and copy all written reports or statements made in connection with the Defendant's case by each expert consulted by the State...."

In response to those requests, the State disclosed the witnesses it intended at that time to call, which included Fire Investigator John Ruley, but not Captain Zwick. It also informed appellant that, upon reasonable notice, he or his counsel could "inspect and copy all written reports or statements made in connection with this case by each expert consulted by the State." Captain Zwick had indeed made a written Fire Incident Report. Whether appellant or his

attorney actually saw the report before trial is not clear. On November 30, 1981—nearly three months before trial, the State supplemented its answer to appellant's discovery request and informed him of its intention to call Captain Zwick as a witness.

It is clear, then, that the State fully complied with the Rule and with appellant's actual request. It was obliged to do no more.

### (2) *Appellant's Financial Circumstances*

■ Appellant complains here of two inquiries by the State into his financial circumstances, inquiries that he contends are proscribed by *Vitek v. State,* 295 Md. 35, 453 A.2d 514 (1982).

The first inquiry came during the examination of Irene Taylor, the resident manager of the apartment complex where appellant had lived and where the fire occurred. Ms. Taylor had brought with her the business records of the landlord pertaining to appellant's tenancy, which she said were kept in the ordinary course of business. The initial part of the examination revealed that appellant's lease expired on the day of the fire and that he had not sought to renew it. The file also contained appellant's payment record, and over objection Ms. Taylor was permitted to testify that "at times he was lenient; he was late with his payments." The State also introduced, over objection, exhibits showing that on five occasions—in June, August, and December of 1980 and in February and March of 1981—the landlord had sought repossession of the apartment because one month's rent was late.

The second inquiry involved essentially a single question to appellant on cross-examination. Without objection, appellant admitted that he had owned a business known as Dundalk Supply and that it had gone "out of business" in 1979 or 1980. The objection came when the prosecutor asked why it went out of business, the answer being "[i]t was not making money." Appellant denied that the business went bankrupt.

In *Vitek*, the defendant was charged with robbery. At issue was whether it was proper for the State, through cross-examination, to show that he had just been released from jail on the day of the robbery, that he had no job, and that he had little or no money. The Court held that such evidence "was irrelevant to the main issue of guilt or innocence and could not be used to infer motive." *Id.*, 40, 453 A.2d 514. In reaching that conclusion, the Court quoted from a Michigan case and thus adopted the notion that it would not

> " 'assume that wealth exerts a greater attraction on the poor than on the rich.' To do so would 'effectively establish a two-tiered standard of justice and demolish *pro tanto* the presumption of innocence.' Our system of justice and its constitutional guarantees are simply too fragile to permit this type of unfounded character assassination."

*Id.*, 41, 453 A.2d 514. *See also United States v. Mullings*, 364 F.2d 173 (2d Cir.1966), also cited by the Court [295 Md.], at 45–46, 453 A.2d 514; for the same proposition.

Having adopted that view—that as a general rule it is inappropriate to use the defendant's poverty to establish a criminal motive—the Court hastened to point out:

> "This is not to say that evidence of an accused's financial situation is never admissible. However, we agree with the appellant that in order for such evidence to be admissible, there must be something more than a 'general suspicion' that because a person is poor, he is going to commit a crime. We hold that while normally it is not allowable to show impecuniousness of an accused, such evidence would be admissible under special circumstances."

*Vitek, supra*, 295 Md. at 41, 453 A.2d 514.

The Court did not undertake to define what "special circumstances" would have to exist in order to make evidence of impecuniousness or financial distress admissible. We must keep in mind, of course, the evidence at issue in

*Vitek*—that the defendant had recently been released from jail and was unemployed. The Court's concluding sentence and actual holding made specific reference to that: "the inference of motive because Vitek was unemployed and had just recently been released from jail is 'too speculative' and 'too remote'...." *Id.*, 46, 453 A.2d 514.

The Court's view in this regard follows that of Dean Wigmore, who noted that the practical result of using a defendant's lack of money to show motive "would be to put a poor person under so much unfair suspicion and at such a relative disadvantage that for reasons of fairness this argument has seldom been countenanced *as evidence of the graver crimes, particularly those of violence.*" (Emphasis added.) 2 *Wigmore On Evidence* § 392(2)(a) (1979). Wigmore goes on to state, however, with considerable case law support, that

> "in cases of merely peculative crime (such as larceny or embezzlement) and in civil cases where the issue is whether the defendant *borrowed money* or not, the fact that he was in need of it at the time is decidedly relevant to show a probable desire to obtain it and therefore a probable borrowing or purloining; and there is here not the same objection from the standpoint of possible unfair prejudice."

*Id.*, § 392(2)(a) (emphasis in original).

It is not clear that the *Vitek* Court intended to make so broad a distinction, although it is interesting to note that two of the three cases relied on by the Court (*People v. Andrews*, 88 Mich.App. 115, 276 N.W.2d 867 (1979), and *State v. Stewart*, 162 N.J.Super. 96, 392 A.2d 234 (App.Div. 1978)) involved violent crimes.[2] Whether or not a distinction can be drawn between "peculative" or "non-peculative" crimes, in general, the law seems clear and uniform that, where the charge is arson, and especially where it is arson with intent to defraud an insurance company, evidence of

---

**2.** The third (*United States v. Mullings, supra,* 364 F.2d 173), involved a breaking onto the victim's property and an attempted theft of goods.

the defendant's impecunious condition or need for money is admissible to show motive. *See Com. v. Niziolek,* 380 Mass. 513, 404 N.E.2d 643 (1980); *Com. v. Jacobson,* 19 Mass.App.Ct. 666, 477 N.E.2d 158 (1985); *State v. Murdock,* 160 Mont. 95, 500 P.2d 387 (1972); *People v. Calvaresi,* 198 Colo. 321, 600 P.2d 57 (1979); *People v. Ray,* 640 P.2d 262 (Colo.Ct.App.1981); *People v. Martin,* 59 Ill.App.3d 785, 17 Ill.Dec. 172, 376 N.E.2d 65 (1978); *State v. Whisler,* 231 Iowa 1216, 3 N.W.2d 525 (1942); *State v. Caliendo,* 136 Me. 169, 4 A.2d 837 (1939); *State v. Lytle,* 214 Minn. 171, 7 N.W.2d 305 (1943). The reason often expressed for this rule is that motive in these cases, where the defendant's own property is damaged or destroyed, is an important element for the State to prove, that direct proof of motive is nearly impossible, and that some latitude must be allowed in order to prove it circumstantially. We think that qualifies as a "special circumstance," and that the evidence adduced was not prohibited by *Vitek.*

### (3) *The Telephone Calls*

■ Appellant's third complaint concerns the testimony of Joseph Costy, a claims adjustor for St. Paul Fire and Marine Insurance Co. Mr. Costy stated that his company had issued a policy insuring the contents of appellant's apartment, that appellant had reported a loss to the company's agent, Eric Anderson and Son, and that the agent had forwarded a loss notice to him. It was when he was asked about a telephone call from appellant on March 3, 1981, that appellant objected "unless he has personal knowledge of the accused's voice and can testify to prior experience that he knew it was the Defendant." The objection was overruled, and Mr. Costy proceeded to describe the conversation.

The next day, he said, appellant called back. Again over objection, Costy said that appellant had been in touch with the company's outside adjustor and that the adjustor had authorized a $1,500 advance. Costy contacted the adjustor, and, as a result of that conversation (which he did not describe), he decided not to make the advance. Appellant then came to Mr. Costy's office, apparently in the belief

that the advance had been approved, and Costy told him then that no advance would be made.

Appellant denied ever having a telephone conversation with Mr. Costy and complains here, as he did below, that Costy should not have been permitted to testify about it.

Appellant correctly posits that "in order to render testimony of a telephone conversation admissible, some preliminary testimony, either direct or circumstantial, must be presented to establish the identity of the other person to the conversation." *Basoff v. State*, 208 Md. 643, 649, 119 A.2d 917 (1956). *See also Archer v. State*, 145 Md. 128, 149, 125 A. 744 (1924); *White v. State*, 204 Md. 442, 446–47, 104 A.2d 810 (1954). As the *White* Court pointed out, the reason for the rule is that "if a party could be held responsible for statements made by a person who has not been identified, the door would be open for fraud and imposition." 204 Md. at 446–47, 104 A.2d 810.

This Court has previously addressed the question of the admissibility of telephone conversations in *Ford v. State*, 11 Md.App. 654, 276 A.2d 423 (1971), and *Mutyambizi v. State*, 33 Md.App. 55, 363 A.2d 511 (1976), *cert. denied* 279 Md. 684, –85 (1977). In both cases, we relied on authority stated in 7 *Wigmore On Evidence* § 2155. Wigmore makes clear that this issue is fundamentally one of authentication. Such authentication can be found either from evidence that the witness was familiar with and recognized the voice of the alleged caller, or, in the absence of such recognition, "sundry circumstances (including other admissions and the like) may suffice." *Id.*, § 2155(1) (1978).

Among the "sundry circumstances" sufficient to render the telephone conversation admissible are (1) where the call is in response to a message left for the caller, where the caller responded in a timely fashion and asked by name for the person who had left the message, *People v. Lynes*, 49 N.Y.2d 286, 425 N.Y.S.2d 295, 298, 401 N.E.2d 405, 408 (1980), (2) where the conversation revealed that the caller had knowledge of facts that only he would be likely to

know, *Earnhart v. State,* 582 S.W.2d 444, 448–49 (Tex. Crim.App.1979), and (3) where the caller showed a familiarity with details that the person in question would be likely to know and was reached at the telephone number and address shown for the person in the telephone directory, *Holzhauer v. Sheeny,* 127 Ky. 28, 104 S.W. 1034 (1907). *See also State v. Hamilton,* 185 Mont. 522, 605 P.2d 1121, *cert. denied* 447 U.S. 924, 100 S.Ct. 3017, 65 L.Ed.2d 1117 (1980); *International Harvester Co. of America v. Caldwell,* 198 N.C. 751, 153 S.E. 325 (1930).

In the instant case, it is true that, at the time of the conversations, Mr. Costy did not know appellant and could not, therefore, attest to his identity. But a course of action was agreed upon between Costy and the caller, and appellant later appeared personally in Costy's office for the purpose of concluding that course of action. Costy identified appellant in court; he had an opportunity to hear his voice at the face-to-face meeting, and thus to match the voice with his visual observation. By the time of his testimony in court, it was clear that he knew who his caller was on both occasions. Appellant's identity was indeed established.

### (4) *Documents*

■ Finally, appellant complains that a number of documents admitted into evidence constituted hearsay and should not have been admitted. He refers specifically to copies of letters sent to him by the landlord, the landlord's record of his rent payments, and documents prepared by or for the adjustor employed by the insurer. We are not convinced that these documents even constituted hearsay evidence, given the authenticating testimony and the purpose for which they were offered; but, in any event, there was an ample showing that they were made and kept in the ordinary course of their author's business and were thus admissible as business records.

JUDGMENT AFFIRMED; APPELLANT TO PAY THE COSTS.