981 A.2d 666

William Leon CLARK

v.

STATE of Maryland.

No. 3065, Sept. Term, 2007.

Court of Special Appeals of Maryland.

Oct. 1, 2009.

Michael R. Braudes (Nancy Forster, Public Defender, on brief), for Appellant.

Jessica Carter (Douglas Gansler, Atty. Gen., on brief), for Appellee.

Panel: DAVIS, ZARNOCH, PAUL E. ALPERT (Retired, Specially Assigned), JJ.

ALPERT, J.

William Leon Clark, appellant, was convicted at a bench trial in the Circuit Court for Prince George's County of second-degree assault.[1] Appellant asks the following two questions on appeal:

I. Was there sufficient evidence of criminal agency to sustain his conviction?

---

1. The court acquitted appellant of first-degree assault and reckless endangerment. The court sentenced appellant on second-degree assault to three years of imprisonment, all but three days suspended, and three years of probation upon his release from prison.

II. Did the trial court err in admitting into evidence two 911 recordings because the recordings: A) were not properly authenticated, and B) were testimonial and violated the Confrontation Clause to the United States Constitution?

For the following reasons, we shall affirm the judgment.

## FACTS

The State's theory of prosecution was that at around 5:45 p.m. on June 8, 2007, appellant assaulted Marsha Thomas at an Econo Lodge in Clinton, Maryland. Two responding police officers from the Prince George's County Police Department testified for the State; Ms. Thomas did not testify. Additionally, the State introduced into evidence two 911 calls Ms. Thomas made immediately after the assault, and her medical records pertaining to her treatment after the assault. The defense's theory was mistaken identification. The defense presented no testimonial or extrinsic evidence. Viewing the evidence in the light most favorable to the State, the following was established.

Patrol Officer Scott Loring testified that at around 5:45 p.m. on June 8, 2007, he received a dispatch call for a domestic disturbance at the Econo Lodge at 7851 Malcolm Road in Clinton. Ten minutes later, he and another officer entered the lobby of the motel and saw a woman sitting on a couch. She motioned to the officers and called out, "Over here." The woman, who was very upset, crying, and distraught, said she was the person who had called the police. Officer Loring noted some bruising on her neck and one of her shoulders, and, at one point, she pulled her sweat pants up to expose a misshapen knee cap. The officers took pictures of her injuries, which were introduced into evidence at trial. (St.Exh. 3–6, 43)

Ten minutes after the police arrived, Ms. Thomas was taken by ambulance to a hospital. The medical records pertaining to her treatment, which were also admitted into evidence, indicated that she had suffered multiple blunt trauma and had a

contusion on her right knee. (St.Exh.2, p. 11, 33) The records related that Ms. Thomas's boyfriend strangled her, kicked her in the stomach and groin, and punched her in the head. (St.Exh. 2, p. 13, 16–64, 69)

Corporal Kevin Carter testified that at around 5:45 p.m. he received a dispatch call for a black man wearing an orange shirt driving a white car away from the Econo Lodge. Within two minutes of receiving the call and less than four miles from the Econo Lodge, the corporal saw a white car with one occupant, a medium-complected black man wearing an orange shirt. The corporal stopped appellant's car and recovered a three and a half inch folding knife from appellant's right front pant pocket. Appellant was placed under arrest.

Audio recordings of two 911 calls were admitted into evidence. In the first recording, made at 5:46 p.m., the sobbing and upset woman caller identifies herself as Marsha Thomas and a victim of "domestic violence." She asks for police and ambulance assistance because she has been "beaten up." She states that she is in her room at an Econo Lodge and gives the address. She adds that she is walking outside, and that "he" is getting ready to leave. When the operator asked who beat her up, the line disconnects. In the second call, made at 5:47 p.m., the still sobbing and audibly upset woman again identifies herself as Marsha and says, "he" hung up the phone. When the operator asked who hung up the phone, she replies, "Leon Clark." In response to the dispatcher's questions, she describes him as a black man wearing an orange shirt and having a knife; she gives his date of birth as February 20 or 22, 1966. She then says she does not know the exact date but knows that it is in February.[2] She states that he threw her down the steps and beat her up. When asked if he has left, she replies, "hold on." After a pause, she replies in the affirmative. She states that he is driving a white Chrysler toward D.C., but she knows he is coming back. In response to

---

2. The court docket entries indicate that appellant's date of birth is February 24, 1966.

the dispatcher's questions, she states that she is calling from a pay phone but will wait for the police in the lobby of the motel.

## DISCUSSION

### I.

Appellant argues that there was insufficient evidence to prove that he was the person who assaulted Ms. Thomas so as to sustain his conviction for second-degree assault. Appellant argues that "Marsha Thomas did not appear in court to even confirm that she had made the 911 calls, much less that she had actually been the victim of a crime, and less still that the 'Leon Clark' that is mentioned in the recording and the William Leon Clark on trial are one and the same." Appellant cites *Cartnail v. State,* 359 Md. 272, 753 A.2d 519 (2000), in support of his argument.

When reviewing the sufficiency of the evidence, our task is to determine " 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *Taylor v. State,* 346 Md. 452, 457, 697 A.2d 462 (1997)(quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979))(emphasis in original). The appellate court does not weigh the evidence or judge the credibility of the witnesses, as that is the responsibility of the trier of fact. *Bryant v. State,* 142 Md.App. 604, 623, 791 A.2d 161, *cert. denied,* 369 Md. 179, 798 A.2d 552 (2002). *See also Jones v. State,* 343 Md. 448, 465, 682 A.2d 248 (1996). Instead, "we [ ] determine whether the verdict was supported by sufficient evidence, direct or circumstantial, which could convince a rational trier of fact of the defendant's guilt of the offenses charged beyond a reasonable doubt." *Bryant,* 142 Md.App. at 622–23, 791 A.2d 161 (quotation marks and citation omitted). The same standard applies to those criminal cases resting upon circumstantial or direct evidence "since, generally, proof of guilt based in whole or in part on circumstantial evidence is no different from proof of guilt based on direct eyewitness accounts." *State v. Suddith,* 379

Md. 425, 430, 842 A.2d 716 (2004) (quotation marks and citation omitted).

As with direct evidence, circumstantial evidence will sustain a conviction when all the facts taken together do not require that the fact-finder resort to speculation or mere conjecture. *Taylor,* 346 Md. at 458, 697 A.2d 462. Several cases have recited the litany that a conviction upon circumstantial evidence alone will not "be sustained unless the circumstances, taken together, are inconsistent with any reasonable hypothesis of innocence." *Hebron v. State,* 331 Md. 219, 224, 627 A.2d 1029 (1993)(quotation marks and citation omitted). *See also Wilson v. State,* 319 Md. 530, 536–37, 573 A.2d 831 (1990); *West v. State,* 312 Md. 197, 211–12, 539 A.2d 231 (1988). We have stated that these cases "have been understandably vague about what would constitute a case based solely on circumstantial evidence and what would amount to inconsistency with any reasonable hypothesis of innocence." *Hagez v. State,* 110 Md.App. 194, 204, 676 A.2d 992 (1996). *See State v. Smith,* 374 Md. 527, 560–61, 823 A.2d 664 (2003)(Harrell, J., concurring)(characterizing "reasonable hypothesis" language as "abstruse"). We stated that the better test is "whether the evidence, circumstantial or otherwise, and the inferences that can reasonably be drawn from the evidence, would be sufficient to convince a rational trier of fact beyond a reasonable doubt, of the guilt of the accused." *Hagez,* 110 Md.App. at 204, 676 A.2d 992 (citations omitted). *See also Jensen v. State,* 127 Md.App. 103, 117–20, 732 A.2d 319, *cert. denied,* 356 Md. 178, 738 A.2d 855 (1999). The Court of Appeals has explained:

> Circumstantial evidence is not like a chain which falls when its weakest link is broken, but is like a cable. The strength of the cable ... does not depend upon one strand, but is made up of a union and combination of the strength of all its strands. No one wire in the cable that supports the suspension bridge across Niagara Falls could stand much weight, but when these different strands are all combined together, they support a structure which is capable of sustaining the weight of the heaviest engines and trains. We therefore

think it is erroneous to speak of circumstantial evidence as depending on links, for the truth is that in cases of circumstantial evidence each fact relied upon is simply considered as one of the strands and all of the facts relied upon should be treated as a cable.

*Hebron,* 331 Md. at 227–28, 627 A.2d 1029 (quotation marks and citations omitted). "Where it is reasonable for a trier of fact to make an inference, we must let them do so, as the question is not whether the [trier of fact] could have made other inferences from the evidence or even refused to draw any inference, but whether the inference [it] did make was supported by the evidence." *Suddith,* 379 Md. at 447, 842 A.2d 716 (quotation marks and citation omitted)(brackets in original).

In *Cartnail v. State,* 359 Md. 272, 753 A.2d 519 (2000), the police were on the lookout for three black males fleeing in an unknown direction from a hotel robbery in a gold or tan Mazda. *Cartnail,* 359 Md. at 277, 753 A.2d 519. An hour and fifteen minutes after the robbery was reported, the police stopped a gold Nissan about two miles from the robbery. *Id.* Inside the car were only two black males, one of whom was the defendant. *Id.* at 278, 753 A.2d 519. Under those circumstances, the Court of Appeals concluded that there was insufficient evidence to confer reasonable articulable suspicion to stop the vehicle. *Id.*

■ The facts of *Cartnail* are easily distinguishable. Here, on the 911 tape the victim identified the man who assaulted her as "Leon Clark" with a date of birth of February 20 or 22, 1966. That information was nearly identical to appellant's name, "William Leon Clark," and his date of birth of February 24, 1966. Unlike *Cartnail, supra,* appellant was stopped within minutes of the assault and four miles of the Econo Lodge wearing clothing and driving a car matching the description given by the victim; he was the sole occupant of the car. Under the circumstances, we are persuaded that *a rational juror could find beyond a reasonable doubt that*

appellant was the person who committed the assault upon Ms. Thomas.

## II.

Appellant argues that the trial court erred in admitting the two 911 audio recordings. He presents two arguments as to why the recordings were inadmissible. First, he argues that the voice on the recordings was not authenticated as Ms. Thomas's voice. Second, he argues that the recordings' statements were "largely testimonial" because the "immediate emergency was concluded" and the caller was in large measure "telling the operator what has been done to her[.]" Appellant argues that as testimonial statements, their admission violated the Confrontation Clause of the Sixth Amendment to the United States Constitution and were inadmissible under *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). We find no merit to either argument, which we shall address in turn.

### A. Authentication

Md. Rule 5–901, titled **"Requirement of authentication or identification"** provides, in pertinent part, "The requirement of authentication or identification as a condition precedent to the admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Subsection (b) lists 10 examples of authentication conforming with the Rule's requirements. The Rule states, however, that the listed examples are "[b]y way of illustration only, and not by way of limitation[.]"

One of the listed examples, Rule 5–901(b)(4), provides that identification may be accomplished through circumstantial evidence. In *Knoedler v. State*, 69 Md.App. 764, 772–74, 519 A.2d 811 (1987), the Court of Special Appeals held that telephone conversations are admissible if direct or circumstantial evidence is presented "to establish the identity of the other person to the conversation." The *Knoedler* Court stated that "[s]uch authentication can be found either from evidence that the witness was familiar with and recognized the voice of

the alleged caller, or, in the absence of such recognition, 'sundry circumstances (including other admissions and the like) may suffice.'" *Id.* (citing 7 *Wigmore on Evidence,* § 2155(1)(b) (1978)).

■ Here, the female caller identified herself as "Marsha Thomas" to the Prince George's County 911 operator. She described her assailant, her injuries, and stated that her assailant had beaten her up, strangled her, and pushed her down the stairs. She told the operator that she would be near the front desk of the Econo Lodge lobby waiting for the police to arrive. When the police arrived ten minutes later, they found a woman sitting on a couch in the front lobby. She waved them over and said she had called. She had bruises on her neck and shoulder and her knee was misshapen. She was taken by ambulance to a hospital. The medical records pertaining to her treatment were introduced into evidence without objection. The records identify the patient as "Marsha Thomas" and contain a photocopy of her Washington, D.C. driver's license. The records list the injuries and the cause of the injuries, which are consistent with the injuries about which she complained to the police. Under the circumstances, we are persuaded that the trial court did not err in admitting the two 911 recordings as sufficiently authenticated. *Cf. United States v. Orozco–Santillan,* 903 F.2d 1262, 1266 (9th Cir.1990) ("The identity of a telephone caller may be established by self-identification of the caller coupled with additional evidence such as the context and timing of the telephone call, the contents of the statement challenged, internal patterns and other distinctive characteristics, and disclosure of knowledge of facts known peculiarly to the caller.").

## B. Confrontation Clause

In *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), at issue was the admissibility of a tape-recorded statement by the accused wife, made while she was in police custody in response to often leading questions from police detectives, implicating her husband in the stabbing of a man and arguably undermining her husband's claim of self-

defense. *Crawford,* 541 U.S. at 39–40, 65, 124 S.Ct. 1354. Although she did not testify at trial because of Washington State's marital privilege law, her statement was admitted at trial because the trial court, for several reasons, found the statement reliable. *Id.* at 40, 65, 124 S.Ct. 1354. The Supreme Court reversed the conviction, likening her statement to *ex parte* testimony admitted against a criminal defendant, and ruled that its admission had violated the accused's rights under the Confrontation Clause. *Id.* at 66, 124 S.Ct. 1354. The *Crawford* Court held that the Confrontation Clause bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross examination." *Id.* at 53–54, 124 S.Ct. 1354.

▆ The critical determination under *Crawford* is whether an out-of-court statement is testimonial. The Court explained that "the principal evil at which the Confrontation Clause was directed was the civil-law mode of criminal procedure, and particularly its use of *ex parte* examinations [conducted by judicial officers] as evidence against the accused." *Id.* at 50, 124 S.Ct. 1354. The Court stated that only "testimonial" statements cause a declarant to be a "witness" within the meaning of the Confrontation Clause. *Id.* at 51, 124 S.Ct. 1354. The *Crawford* Court explained that a witness is a person who "bear[s] testimony." *Id.* " 'Testimony, in turn, is typically [a] solemn declaration or affirmation made for the purpose of establishing or disproving some fact.' " *Id.* (Citation omitted). Thus, "[a]n accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not." *Id.*

The Court declined to articulate a comprehensive definition of what is testimonial, but set forth three formulations of "core class" testimonial statements. The three formulations were: (1) *"ex-parte* in-court testimony or its functional equivalent— that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-exam-

ine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially[;]" (2) "extrajudicial statements ... contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions[;]" and (3) "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial[.]" *Id.* at 51–52, 124 S.Ct. 1354 (quotation marks and citations omitted)(ellipses in original). It stated that the formulations "all share a common nucleus," and held that at "a minimum" the formulations applied to "prior testimony at a preliminary hearing, before a grand jury, or at a former trial[,] and to police interrogations." *Id.* at 52, 68, 124 S.Ct. 1354. The Court stated that those kinds of statements were the "closest kinship to the abuses at which the Confrontation Clause was directed." *Id.* at 68, 124 S.Ct. 1354. If, however, the statement is nontestimonial hearsay, "it is wholly consistent with the Framers' design to affirm the States flexibility in their development of hearsay law" to such statements that are exempt from Confrontation Clause scrutiny. *Id.*

Two years later, the Supreme Court passed upon another Confrontation Clause issue. *Davis v. Washington*, 547 U.S. 813, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006) involved two consolidated cases asking the Court to determine when statements made to law enforcement personnel during a 911 call and at a crime scene are "testimonial," and thus subject to the requirements of the Sixth Amendment's Confrontation Clause. In *Davis v. Washington,* a woman made a 911 call while in the midst of a domestic disturbance with her former boyfriend. *Davis,* 547 U.S. at 817, 126 S.Ct. 2266. Four minutes after the call, the police found her in a shaken state with fresh injuries on her body and frantically attempting to leave the residence with her belongings and children. *Id.* at 818, 126 S.Ct. 2266. At her boyfriend's trial, the victim did not appear and the tape of her 911 call was admitted into evidence. *Id.* at 819, 126 S.Ct. 2266. In *Hammon v. Indiana,* the police responded to a report of a domestic disturbance and found the victim alone on the porch. Although she appeared "somewhat

frightened," she told them that "nothing was the matter[.]" *Id.* at 819, 126 S.Ct. 2266. The police questioned the victim and learned that she and her husband had had a fight. *Id.* at 820, 126 S.Ct. 2266. She filled out and signed a "battery affidavit" alleging that her husband had physically assaulted her. *Id.* At her husband's trial, the victim did not appear and her affidavit and oral statements to the police were admitted into evidence. *Id.* at 820–21, 126 S.Ct. 2266.

The *Davis* Court clarified that not all statements made during police interrogation are "testimonial." The Court explained that whether statements made during a police interrogation are "testimonial" depends upon the circumstances under which they were given. Statements "are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Id.* at 822, 126 S.Ct. 2266 (footnote omitted). In contrast, statements "are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." *Id.*

The *Davis* Court considered a number of factors in determining the primary purpose of the interrogations at issue, specifically:

(1) the timing of the statements, *i.e.*, whether the declarant was speaking about actually happening or past events; (2) whether the "reasonable listener would recognize that [the declarant] ... was facing an ongoing emergency"; (3) the nature of what was asked and answered, *i.e.*, whether the statements were necessary to resolve the present emergency or simply to learn what had happened, in the past; and (4) the interview's level of formality.... In assessing formality, relevant measures included the interview's location; whether the declarant was actively separated from the defendant; whether "the officer receiv[ed] [the declarant's] replies for use in his investigat[ion]"; and whether the

statements "deliberately recounted, in response to police questioning, how potentially criminal past events began and progressed."

*State v. Lucas*, 407 Md. 307, 323, 965 A.2d 75 (2009)(quoting *Davis*, 547 U.S. at 830, 126 S.Ct. 2266)(ellipses and brackets in original).

The *Davis* Court concluded that the interrogation that took place during the 911 call did not produce testimonial statements while the police interrogation in *Hammon* did. The Court reasoned that the former were not testimonial because the victim was speaking about events as they were occurring, rather than describing past events; that she was facing an ongoing emergency; and that the statements were necessary to resolve the ongoing emergency. *Davis*, 547 U.S. at 827–28, 126 S.Ct. 2266. Under these circumstances, the Court explained that the "primary purpose" of the interrogation was to "enable police assistance to meet an ongoing emergency" and in this connection the victim "simply was not acting as a *witness*, she was not *testifying*. What she said was not 'a weaker substitute for live testimony' at trial." *Id.* at 828, 126 S.Ct. 2266 (citations omitted)(emphasis in original). In contrast, in *Hammon*, the Court concluded that the statements were testimonial because the interrogation was part of an investigation into possibly past criminal conduct and there was no emergency in progress. *Id.* at 829–30, 126 S.Ct. 2266. The Court stated that when objectively viewed, the "primary, if not indeed the sole, purpose of the interrogation was to investigate a possible crime—which is, of course, precisely what the officer *should* have done." *Id.* at 830, 126 S.Ct. 2266 (emphasis in original).

Since the *Davis* holding, we and the Maryland Court of Appeals have not discussed the admissibility under the Confrontation Clause of statements made during a 911 call.[3] We

---

3. In *Marquardt v. State*, 164 Md.App. 95, 882 A.2d 900, *cert. denied*, 390 Md. 91, 887 A.2d 656 (2005), decided a year before *Davis*, we were asked to decide whether "statements" in a 911 recording were testimonial. The content of the 911 recording consisted of the victim strug-

do, however, find helpful *State v. Lucas*, 407 Md. 307, 965 A.2d 75 (2009) where the Court of Appeals addressed, not the admissibility of a 911 call, but the admissibility of statements under a fact pattern similar to that before us.

In *Lucas*, a visibly upset woman standing in her apartment doorway with marks on her neck made statements to a police officer responding to a domestic call. The statements were made in response to the officer asking her "what happened" and "where she got the marks[.]" *Lucas*, 407 Md. at 308, 965 A.2d 75. The woman told the officer that she and her boyfriend had been in an argument that became physical, and that he had kicked her in the leg and grabbed her around the throat. The officer did not advise the woman of her rights but told her "we were there for an investigation." *Id.* at 310, 965 A.2d 75. The officer testified that the purpose of speaking to her was to conduct an investigation and "to gather information." *Id.* Additionally, the officer had the victim fill out a "domestic violence form" and that he "went over it" with her. *Id.* at 310, 965 A.2d 75. The woman's boyfriend was tried and ultimately convicted of second-degree assault.

In determining whether the statements were admissible under the Confrontation Clause, the Court's "task [was] to determine whether the circumstances of [the officer's] interrogation of [the victim] objectively indicate[d] that its primary purpose was to enable police assistance to meet an ongoing emergency[.]" *Id.* at 323, 965 A.2d 75 (quotation marks and citation omitted). The Court found the circumstances distin-

---

gling with the accused, after dialing 911 and allowing the phone to remain on. We stated in *Marquardt, Id.* at 122, 882 A.2d 900, that we did not need to "decide whether 911 recordings in general are 'testimonial' in nature to resolve the issue before us because it is sufficient to conclude that the 911 recording in this case was clearly nontestimonial."

We note that in a pending case before the Court of Appeals one of the issues to be decided is whether the 911 recording at issue is testimonial. *See Langley v. State*, No. 51, Sept. Term, 2008, argued October 30, 2008 (whether admission of a 911 recording in which an individual describes a particular man seen driving away in a particular car violated petitioner's right of confrontation).

guishable from those where "officers encountered victims with apparent severe injuries requiring immediate medical attention and/or where an assailant has not yet been located." *Id.* at 324, 965 A.2d 75. The Court noted that there was no indication that the responding officers administered or called for emergency medical assistance upon observing her condition. *Id.* at 325, 965 A.2d 75. Additionally, the Court noted that when the woman was questioned she was in police protection and no longer under any imminent danger. *Id.* at 326, 965 A.2d 75. Thus, the Court concluded that statements were inadmissible under the Confrontation Clause because the primary purpose was to "establish or prove past events potentially relevant to later criminal prosecution" and not to "enable police assistance to meet an ongoing emergency." *Id.* at 323–24, 965 A.2d 75 (quotation marks and citation omitted).

■ Applying the above law to the facts before us, we are persuaded that Thomas's statements in her two 911 calls were not testimonial. The primary concern of a person in her situation was to get help, not to create evidence for use in a future prosecution against appellant. The assault had just occurred and the stated purpose of her call was to get immediate medical and police help. Contrary to appellant's argument, the emergency had not concluded, as evidenced by Thomas's distraught sobbing voice and her response that appellant had just left but she knew he was going to come back. *Cf. State v. Camarena*, 344 Or. 28, 176 P.3d 380 (2008)(statements in 911 recording held not testimonial where victim called 911 crying to report that her boyfriend had hit her in the eye "a minute before," that he took the car and left, that she did not know where he was, and he could easily have returned before the police arrived). Moreover, there was no knowing response to a line of structured questioning taking place in a formal investigative environment. The purpose of the 911 operator's questions was to decide what, if any, action was necessary to prevent further harm. Additionally, we note that the trial court "exclude[d] any testimony ... pertaining to previous attacks, pertaining to any drug use; any statements that were not about the ongoing emergency at the time

of the call[.]" Under the circumstances presented, we hold that the trial court did not err in admitting the 911 audio recordings. The statements in the recordings were not testimonial, and therefore, their admission did not violate appellant's rights under the Confrontation Clause.

**JUDGMENT AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**